UNITED STATES of America,
Plaintiff-Appellee,

v.

Gilbert Lee GROSS, Defendant-Appellant.

No. 71–1063.

United States Court of Appeals,
Seventh Circuit.

Nov. 2, 1971.

John D. Clouse, Evansville, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., James T. Roberts, Asst. U. S. Atty., S. D. Ind., Indianapolis, Inc., for plaintiff-appellee.

Before CUMMINGS, KERNER and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

After a jury trial, the defendant was convicted of dealing in firearms without a license in violation of 18 U.S.C. § 922(a) (1).[1] He was sentenced to two years' imprisonment and fined $2,000. The imprisonment was suspended and he

was placed on probation. He appeals on numerous grounds, some of which were passed upon by the district court in a thorough opinion upon the denial of defendant's motion to dismiss the indictment.[2]

The defendant was the manager of the sporting goods department of a K Mart Store in Evansville, Indiana. The K Mart Store was a licensed firearms dealer, and defendant and other salesmen sold new and used pistols, shotguns and rifles to the store's customers. K Mart did not accept used guns as trade-ins; defendant on occasion would personally buy used guns from customers so that they could apply the proceeds on the purchase of a new gun from K Mart. Although the defendant conceived of this activity as benefiting his employer, the general manager of K Mart testified that two or three months prior to defendant's arrest he had expressly warned defendant that it was contrary to company policy for defendant to conduct a customer from the store premises to his own automobile in order to engage in private transactions from the vehicle trunk.

The defendant had no personal license to deal in firearms. He admitted in the trial that he had traded guns for other guns and "for other things"; that he purchased guns and resold them; that from January 23 to March 13, 1970 (the period specified in the indictment), he had sold five firearms to persons other than the police officer involved in his later arrest.

On January 23, 1970, the defendant sold a .25 caliber pistol for $40 to an undercover police officer in a back storeroom of the K Mart store. On February 16, the officer returned to the store but was told by the defendant to contact him

[1]. § 922(a) (1) provides that "It shall be unlawful * * * for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or am-

munition in interstate or foreign commerce * * *."

[2]. District Judge Holder's opinion appears at 313 F.Supp. 1330 (S.D.Ind.1970). To the extent it is applicable to defendant's contentions on appeal, we adopt the lower court opinion as part of this opinion.

at his home, where, later that evening, the officer purchased a .38 caliber Colt pistol for $115. On February 27, defendant and the officer met in an Evansville park during defendant's lunch break, where the officer bought a .38 caliber Rossier pistol for $70. They also discussed the possible sale of Thompson automatic machine guns. On March 12, the defendant told the officer that the deal on the machine guns had fallen through but offered instead to sell two .38 caliber Hart pistols and one .25 caliber pistol for $150. The next day the defendant and the officer rendezvoused at the park and, after displaying the three pistols, the defendant was arrested. In his automobile, the arresting officers found three rifles. The government proved at the trial that the six firearms purchased by the undercover police officer had previously been purchased by the defendant from a licensed firearms dealer named John B. Moore and that the prices the defendant charged the officer were considerably in excess of the market value of those guns.

The defendant first contends that the statute is unconstitutional as being vague, arguing that no definite standards are established "such as number of sales, dollar volume of sales, whether or not one has a fixed place of business, number of employees."

The term "dealer" is defined in the act as meaning "any person engaged in the business of selling firearms or ammunition at wholesale or retail." 18 U.S.C. § 921(a) (11).

We have only recently had occasion to interpret this provision. In United States v. Zeidman, 444 F.2d 1051, 1055 (7th Cir. 1971), Judge Pell said:

"A 'dealer' is defined as 'any person engaged in the business of selling firearms * * * at wholesale or retail, * * *' 18 U.S.C. § 921(a) (11). The statute does not prescribe any standards for determining when a person is 'engaged in the business.'

"The Government presented evidence at the trial of six separate weapons which the defendant either sold or offered for sale. As to one of these, there was testimony that defendant had acquired it, sold it, reacquired it and was now again offering it for sale.

\* \* \* \* \* \*

"In view of the evidence as to the six different weapons, we are not able to conclude that there is not sufficient evidence to support a conviction under Count IV."

In construing a similar definition of a dealer in 15 U.S.C. § 901(5), the Ninth Circuit has recently said in Kaneshiro v. United States, 445 F.2d 1266, 1269–1270 (9th Cir. 1971):

"Next, appellants contend that there was no evidence, outside of the single shipment of guns to Tokyo, from which the jury could reasonably have inferred that either of them was a dealer. An isolated transaction, while not in itself a business, is, nevertheless, evidence to be considered in determining whether the seller is engaged in a business. Bush v. United States, 218 F.2d 223 (10th Cir. 1954); Supreme Malt Products Co. v. United States, 153 F.2d 5 (1st Cir. 1946). \* \* \* the fact that the guns were sold in two separate installments to two different people, is ample evidence to support a finding that appellants were 'engaged in the business of selling firearms' and were to that extent dealers under § 901(5)."

■ There appears to be little doubt that "dealer" means anyone who is engaged in *any* business of selling firearms, and that "business" is that which occupies time, attention and labor for the purpose of livelihood or profit. Stone v. District of Columbia, 91 U.S.App.D.C. 140, 198 F.2d 601, 603 (1952).

■ We conclude that on the evidence before us the statute here is not impermissibly vague and that the defendant's sale of eleven separate weapons within a

reasonably short space of time clearly made him a dealer under the statutory definition.

Closely allied to the argument regarding the definition of a dealer is defendant's contention that the government was "estopped to prosecute the defendant" because the Internal Revenue Service published a booklet[3] which included the following:

> "Can an unlicensed individual sell a firearm to another person who resides in the same State as the seller?

> "Yes. There is nothing in the Gun Control Act of 1968 which prohibits such a sale."

■ Under the proper circumstances the government may be estopped, but the doctrine of estoppel must be applied with great caution to the government and its officials. United States v. Fox Lake State Bank, 366 F.2d 962, 965–966 (7th Cir. 1966). In most of those cases holding the government to be estopped, the facts upon which the private party relied to his detriment were addressed or communicated directly to him by a government official. 2 Davis, Administrative Law Treatise §§ 17.03, 17.04 (1958 and 1970 Supp.). In Bornstein v. United States, 345 F.2d 558, 170 Ct.Cl. 576 (1965), the taxpayers argued that the Commissioner of Internal Revenue was estopped because of his issuance of a prior inconsistent private ruling to a similarly situated corporation and because of oral representations made by an Internal Revenue employee to the taxpayers that the ruling would apply to them. In finding no estoppel, the court analyzed the decisions which hold that the doctrine of equitable estoppel does not prevent the Commissioner from retroactively changing his legal opinion to correct an error of law.

■ However, we need not determine here whether the answer to the question was a correct statement of law or not since the question pertained to selling "a firearm" and the answer was that the statute did not prohibit "such a sale." The reasonable reader would conclude that the answer implied that a single isolated sale did not constitute engaging in the "business of selling firearms." It was totally unreasonable for the defendant to believe that his continuous buying and selling of weapons was protected by the umbrella of the answer.[4]

■ In arguing estoppel, the defendant also raises the issue of entrapment. The question of entrapment in firearms cases is for the jury. United States v. Lauchli, 371 F.2d 303 (7th Cir. 1966); Note, 73 Harv.L.Rev. 1333, 1343 (1960).

The defendant next argues that the government booklet containing the question and answer discussed above should have gone to the jury room with the other exhibits. The trial judge permitted the defendant to have the first eighteen pages of the booklet, containing the text of the Gun Control Act of 1968 and questions and answers, go to the jury. But he denied the defendant's request that the remaining pages (in excess of 100), detailing firearms statutes and ordinances state by state, also be sent to the jury.[5] Defendant's counsel did not accept the court's offer as to the eight-

---

3. "Published Ordinances—Firearms—State Laws and Local Ordinances Relevant to Title 18 U.S.C. Chapter 44," Publication 603 (Rev. 11–69).

4. The preceding question and answer in the booklet are: "Can someone who isn't in the gun business make a sale to a person in another State? No. As a general rule, a person who is not licensed may not transfer a firearm by any means to someone in another State who is not a licensee." By referring to someone "who isn't in the gun business," the con-

text makes it clear that "a sale" is a single isolated sale; that context carries over to the following question. Nevertheless, since that question could be misleading, we hope that the Internal Revenue Service will clarify it for the future.

5. The court said: "I would permit the first 18 pages of the document to the jury. Any of the other material would just confuse the jury. You could tear those out, and they can go to the jury room."

een pages but instead asked for permission to show the appropriate pages to the jury and to argue in regard to the crucial question and answer. Permission was granted by the court.

 The taking of exhibits by the jury to their room is a matter primarily within the sound discretion of the court. Murray v. United States, 76 U.S.App.D.C. 179, 130 F.2d 442, 444 (1942). The court here obviously exercised its discretion prudently in withholding from the jury a mass of conflicting ordinances and statutes which bore no relevancy whatever to the issues being tried. Furthermore, counsel declined to accept the court's offer that the relevant part of the booklet be separated and sent to the jury. Instead, the court granted in full counsel's alternative request concerning the booklet.

Defendant contends that the trial court erred in failing to grant a mistrial when the prosecutor asked the defendant, "Did you ever sell any guns to Lee Harvey Oswald?" There was no evidence in the case relating to Oswald and the question was entirely without basis.

In United States v. Goodman, 110 F.2d 390, 394–395 (7th Cir. 1940), this court noted:

"It is peculiarly within the knowledge of the trial judge whether remarks of counsel during the trial tend to prejudice the cause of a party. The courtroom atmosphere, prior remarks which have provoked the questioned statements, and other factors which cannot be appraised by a reviewing court may render remarks of counsel innocuous, although they may appear viciously prejudicial when removed from their setting. * * * Furthermore, the trial judge is justified in assuming that the jurors possess sufficient common sense and discrimination to enable them to evaluate conduct and remarks of counsel even if the conduct and remarks should offend ordinary standards of propriety. It is only fair to jurors to assume that they do not always take counsel as seriously as counsel, in the heat of argument, take themselves.

"Ordinarily the trial court's instructions avert any possibility of injury to a party's cause from improper remarks of counsel. And in the exceptional case reviewing courts must rely largely on the trial court's judgment respecting the need of special action to avert injury."

 In this case, the defendant had been exceedingly evasive on cross-examination to the extent that the court instructed him "not to avoid" the questions. Nevertheless, he persisted, whereupon the prosecutor asked the offensive question. The court immediately instructed the jury to disregard the matter and did so in a commendable manner which tended to minimize rather than emphasize the prejudicial possibilities inherent in the situation.[6] In a close case, improper argument or questioning must be closely scrutinized. United States v. Fidanzi, 411 F.2d 1361 (7th Cir. 1969). This case, however, is a very strong one for the government in that the evidence of defendant's eleven firearms transactions while unlicensed was wholly undisputed. Under

6. The court said: "The jury is instructed that counsel for the Government or the defendant may inadvertently make some statement, such as the Court feels the question to specific individuals was made, and the Court feels that it was inadvertent, and I will instruct the jury to disregard it and anything of that nature which might be considered facetious or prejudicial or in bad taste; and the Court is asking the jury to disregard any questions of that nature and give it no more consideration because there is nothing in this case other than the evidence as presented in this courtroom. And the Court has instructed you and will instruct you that this case is to be tried only on the evidence which is presented in this courtroom. You will receive further statements and further arguments by counsel and attempting to interpret this case, and when you do, they will tell you as I will tell you, that their statements or arguments, even their questions, are not evidence."

these circumstances, we find that the trial court properly refused to grant a mistrial on the basis of the Oswald question.

 The defendant next argues that the court erred in refusing to instruct the jury that if it found that the defendant acted "under a mistaken belief" that he was not a firearms dealer, he should be acquitted. It is not clear whether the defendant is pleading ignorance of the law, mistake of fact or lack of intent, but regardless of which, both the Supreme Court and this court have ruled adversely to him. The statutory provision which the defendant was convicted of violating was part of the Gun Control Act of 1968, which also amended the National Firearms Act. In United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), the Court, in construing the amended Act, held that scienter is not required and said (at 607, 91 S.Ct. at 1117):

> "By the lower court decisions at the time that requirement was written into the Act [making it unlawful to possess an unregistered firearm] the only knowledge required to be proved was knowledge that the instrument possessed was a firearm. See Sipes v. United States, 321 F.2d 174, 179, and cases cited."

See also, United States v. McCutcheon, 446 F.2d 133 (7th Cir. 1971), and United States v. Gardner, 448 F.2d 617 (7th Cir. 1971). These cases hold that if the particular section of the Gun Control Act of 1968 under consideration requires no specific intent or knowledge, none will be inferred. Section 922(a) (1) of Title 18, involved here, simply makes it unlawful "to engage in the business of * * * dealing in firearms."

The defendant's final contention is that the jury verdict is not sustained by sufficient evidence. There was uncontradicted evidence introduced at trial showing that the defendant had made multiple sales; had bought firearms for the purpose of reselling them; had traded firearms with the object of profit in mind; and had carried on these activities in a clandestine manner in direct conflict with the interest of his employer and contrary to instructions from his employer. The defendant offered no countervailing evidence to refute the government's evidence. In fact, the defendant admitted activities customary of businessmen in carrying on a firearms business. The verdict is amply supported by the evidence.

The defendant has raised some other points with less conviction and authority. We have considered them all and find them either fully answered by this opinion or the district court's opinion, or to be otherwise without merit.

The judgment of conviction is affirmed.