**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gary Gene WILLIAMS, Defendant-
Appellant.**

**No. 73–1809.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1974.

Decided Sept. 3, 1974.

582

Lester Watson, St. Louis, Mo., for defendant-appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for plaintiff-appellee.

Before JOHNSEN and VAN OOSTERHOUT, Senior Circuit Judges, and TALBOT SMITH, Senior District Judge.[*]

PER CURIAM.

I.

Gary Gene Williams was convicted under 18 U.S.C. §§ 922(a)(1) and 924(a), on a jury trial, of engaging in the business of dealing in firearms without a federal license. It is undisputed that he had no license.

His brief sets out eight points or issues for reversal, but some of these are mere projections or refinements of the same general question. On this basis the questions and contentions reduce themselves in their substance to the following:

(1) That, on the definition made in § 921(a)(11) of the term "dealer," §

922(a) is too vague and indefinite to constitute a valid criminal statute, in that it provides no standard on (a) number of sales, (b) dollar volume of sales, (c) whether it relates only to a fixed place of business, and (d) number of employees, which elements are asserted to be necessary to enable one who sells a gun or guns to know whether he is a "dealer."

(2) That the five sales of firearms, which the Government agents testified that defendant had made within a month's time, were the result of such inducement by the agents as to constitute entrapment, and hence the court erred in denying defendant's several motions for a directed verdict of acquittal.

(3) That the court further erred in denying defendant's motion for a mistrial during the prosecutor's opening statement, when in chronologizing the five sales, the prosecutor stated that the dealings with defendant had their beginning at a filling station where one of the Government's informers or collaborators was employed, to which the defendant had gone, and at which the Government agent was at the time present, and then proceeded to interject that "ostensibly he was there to buy from Mr. Williams [defendant] a stolen credit card."

(4) That the court "erred in failing to sustain Defendant's Motion to Supply Defendant with the names of Witnesses who appeared before the Grand Jury in order that Defendant may [might] take their deposition and become fully apprised of the evidence the Government was relying upon to seek a conviction."

II.

Each of these contentions and the projections or refinements of them involved in defendant's total of eight points or issues are without merit in the situation.

■ As to contention (1) and the projection of it against the indictment,

[*]TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

we agree with what was held by the District Court in United States v. Gross, 313 F.Supp. 1330, 1333 (D.C.S.D.Ind. 1970) and by the Court of Appeals of the Seventh Circuit in its affirmance, 451 F.2d 1355, 1357.

The District Court said (p. 1333):

While it is true that 18 U.S.C. § 921 requires no minimum number of sales, dollar volume of sales, or number of employees to constitute "engaging in business," as defendant asserts, there should be no doubt in the minds of men of common intelligence that "dealer" means one that is engaged in *any* business of selling * * * firearms and that "business" is that which occupies the time, attention and labor of men for the purpose of livelihood or profit.

Further, the Court of Appeals took occasion to reiterate and approve this holding, as follows (p. 1357):

There appears to be little doubt that "dealer" means anyone who is engaged in *any* business of selling firearms, and that "business" is that which occupies time, attention and labor for the purpose of livelihood or profit. Stone v. District of Columbia, 91 U.S.App.D.C. 140, 198 F.2d 601, 603 (1952).

The trial court's instructions here similarly defined the term "dealer" and left it to the jury to determine whether or not upon that basis defendant had been engaged in the business of selling firearms in respect to the transactions involved.

As to contention (2), the court's entitlement to leave the question of entrapment to the jury is equally clear. Entrapment ordinarily involves a question and a determination of fact. Banks v. United States, 348 F.2d 231, 237 (8th Cir. 1965). The court is not entitled to deal with it as a question of law unless the evidence is of such strength as to be without room for reasonable difference in judgment that the defendant committed the crime only because the law enforcement officers attempted to set him up for that purpose and engaged in such "creative activities" to accomplish their aim as had controllingly caused him to yield to their efforts. *Cf.* McDowell v. United States, 383 F.2d 599, 601 (8th Cir. 1967). "However, the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment * * *. To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848.

The testimony of the Government agents showed that they had simply told the defendant, originally through the filling station employee and later through the contact which they thus established with him, that they were interested in buying any guns which he might have for sale, and that they availed themselves of the opportunity to make the several purchases as he presented the guns to them. As indicated, the transactions consisted of individual and not joint sales, and most of them occurred on defendant's bringing a gun over to the filling station for them to see.

Defendant did not take the stand, nor did he offer any other evidence to show entrapment. The only witnesses which he called were his wife and her mother. The wife's testimony sought to get the jury to believe that the first transaction (a machine gun) had not involved a sale at all, but simply a redemption by the filling station employee of his own gun. She said that when he and the Government agent came to defendant's apartment in regard to the gun, the filling station employee had told her that he wanted to repay what defendant had loaned him on the gun and to get it back. The filling station employee denied that he had ever owned the gun or any other machine gun.

In any event, the wife's testimony in this respect would hardly lend support to

defendant's contention that the whole situation was one of entrapment, but on the contrary would tend to discredit it. The mother-in-law's testimony was brief and to the effect merely that she had seen the Government agents come to defendant's apartment on three occasions and that once they had left a note for him to call them. Clearly there was nothing in either the wife's or the mother-in-law's testimony which entitled it to be held as a matter of law that there had been an entrapment.

To this there should be added that the court fairly instructed the jury that they must find the defendant not guilty if they believed that he was not ready and willing to engage in such conduct but that the officers induced him to do so and that he would not have done so except for such inducement.

As to contention (3), regarding the prosecutor's remark in his opening statement that "ostensibly he was there to buy from Mr. Williams a stolen credit card," the prosecutor stated to the court, out of the presence of the jury, that he regarded proof of the fact that defendant had come to the filling station to sell a credit card as being relevant on the question of entrapment as to the firearms' sale. The court forbade any further credit card mention to be made by the prosecutor and instructed the jury to disregard his comment "concerning credit cards." No further such mention or intimation by the prosecutor thereafter occurred in the proceedings.

While the remark was improper, we are in full agreement that it was not of such a nature or made in such manner or under such circumstances as to make it seem likely that the jury would not be able to disregard it and not be prejudicially affected by it. The conscientiousness with which the trial judge had evaluated and dealt with the matter is manifested by the observations in which he engaged at the hearing on defendant's motion for a new trial:

\* \* \* I recall looking pretty clearly at the jury and you can frequently tell if a jury is reacting to something. \* \* \* [M]y impression was that the matter had passed right by them, and I did not deem it to be prejudicial. That was the court's judgment.

Indeed, on the attention which we think a machine gun, a .16 gauge pump shotgun, a .38 caliber revolver, a .12 gauge double-barrel shotgun and a .22 caliber semi-automatic pistol would normally attract in a courtroom, together with the body of evidence relating to them, we would deem it highly improbable that the jury had even remembered the casual mention which had been made at the start of a stolen credit card. In any event, we do not believe it reasonably possible that it could at all have been a factor in the jury's determination of guilt as to the overshadowing and hardly doubtable sales of guns.

As to contention (4), the thrust made appears to be that defendant was deprived of the opportunity to take the depositions of the Government witnesses. First of all, the motion was not one which came within the provisions of Rule 16, Fed.R.Crim.P., as a general discovery right. *Cf.* Kilgore v. United States, 323 F.2d 369, 372 (8th Cir. 1963). Further, it was not one which came within the provisions of Rule 15 as a demonstratedly proper and necessary trial auxiliary. Beyond this, even if the situation had been one that was within Rules 15 and 16, it is not shown and it is not apparent how defendant could have been in any way prejudiced in the uncomplex factual situation involved. In fact, the contention would be entitled to be held to be legally frivolous.

Affirmed.