**UNITED STATES of America,
Plaintiff,**

v.

**Jim BAKER, Defendant.**

**No. 75–60CR(3).**

United States District Court,
E. D. Missouri, E. D.

June 30, 1975.

Donald J. Stohr, U. S. Atty., Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Hale W. Brown, Kirkwood, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court for a decision on the merits, defendant having waived his trial by jury. The defendant is charged with knowingly and intentionally engaging in the business of dealing in firearms and ammunition without being licensed to do so under the provisions of Chapter 44, Title 18, United States Code, a violation of §§ 922(a)(1) and 924(a) of Title 18 of the United States Code. The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

### Findings of Fact

1. In the Fall of 1974, John Pasaka and Robert Beattie, Special Agents for the Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury, were conducting an "undercover" investigation of firearms activity in the Jefferson County, Missouri, area.

2. During the course of their investigation, the two Agents had occasion to be in the Deuces Wild Lounge in High Ridge, Missouri, in October, 1974. At that time, the defendant, Jim Baker, was working as a bartender at that lounge.

3. The Agents struck up a conversation with defendant Baker. The Agents replied after defendant Baker's inquiry as to their occupations that they bought and sold things, mostly guns. At that time nothing further was said concerning firearms. The two Agents did not offer to buy any weapons at that time, nor did defendant Baker offer to sell any to them.

4. On November 5, 1974, the defendant entered the Jesse James Barber Shop in High Ridge, Missouri, while the Agents were present. At that time the defendant made a general announcement that he had a weapon for sale. After some conversation, Agent Pasaka purchased from defendant Baker a Western Field .30-.30 caliber, lever action rifle and a .25 caliber, semi-automatic pistol for the sum of $190.00 in cash.

5. On November 19, 1974, the defendant showed the Agents a Smith & Wesson .38 caliber and asked a price of $175.00. Agent Beattie dickered with the defendant over the price and the gun was eventually sold to the Agents for $170.00 in cash.

6. On December 5 and December 17, 1974, the defendant was quoted as saying that he had had guns for sale but could not sell them to the agents because they had already been sold to other persons.

7. On January 14, 1975, in High Ridge, Missouri, the Agents purchased for $35.00 thirteen boxes of shotgun shells of various gauges and shot sizes.

8. On February 11, 1975, the defendant sold to the Agents a 16 gauge single-shot J. C. Higgins shotgun for $20.00 in cash.

9. In various conversations with the Agents during the time that they were operating "undercover", the defendant offered to sell them handguns in case lots, and stated that he sold weapons to people who could not normally buy weapons, and that he sold guns with no questions asked. The Bureau of Alcohol, Tobacco and Firearms, of the United States Treasury Department, has certified that the defendant has never applied for, or was issued, a license under the Gun Control Act of 1968 (18 U.S.C. § 923).

### Conclusions of Law

In a firearms violation case such as the one presently at bar, the key legal issue is whether or not the defendant was indeed a "dealer" in firearms. The

**1124**

controlling case of *United States v. Gross,* 313 F.Supp. 1330 (S.D.Ind.1970) aff'd 451 F.2d 1355 (7th Cir., 1970), defines "dealer" as:

". . . there should be no doubt in minds of men of common intelligence that 'dealer' means one that is engaged in *any* business of selling . . . firearms and that 'business' is that which occupies the time, attention and labor of men for the purpose of livelihood or profit."

313 F.Supp. at 1333 (Emphasis in original)

Such a definition of "dealer" has been upheld by the Eighth Circuit in *United States v. Williams,* 502 F.2d 581 (8th Cir., 1974).

A similar factual situation involving the sale of several weapons over a time period of some months has been upheld as a violation of § 922(a)(1). *United States v. Day,* 476 F.2d 562, 567 (6th Cir., 1973). It is clear to this Court that the evidence adduced at trial shows that the defendant was engaged in the business of dealing in firearms. The numerous transactions over a period of months indicates that defendant occupied his time, attention and labor and that he made a profit on the matter.

Defendant's counsel, upon cross-examination, attempted to infer that the defendant was entrapped by the Agents. The Court is of the opinion that there was no evidence to indicate that the defendant was induced to commit the offense charged by the two Agents. The evidence shows that the defendant sought out the Agents on several occasions to attempt to sell weapons to them. The defendant also discussed the sale of weapons to other persons. It is clear to the Court that defendant had a predisposition to commit the crime charged. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); and *United States v. Williams, supra.*

After careful and close consideration of the evidence adduced at trial, and memoranda submitted by counsel for the government and counsel for the defense, this Court is of the conclusion that the defendant, Jim Baker, is guilty beyond a reasonable doubt of the offense charged in the indictment.