**UNITED STATES of America, Plaintiff,**

v.

**57 MISCELLANEOUS FIREARMS,
Defendant.**

**No. 73 CV 649–W–4.**

United States District Court,
W. D. Missouri, W. D.

Nov. 19, 1976.

J. Whitfield Moody, First Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Charles C. Shafer, Jr., Kansas City, Mo., for defendant.

## FINDINGS AND OPINION

ELMO B. HUNTER, District Judge.

In the case of *United States v. Joseph W. Williams*, Case No. 23,865, it was charged by a Federal Grand Jury "that from on or about the 7th day of March, 1972, to on or about the 18th day of April, 1972 (defendant Williams) willfully and knowingly engaged in the business of dealing in firearms at his residence and at Andy's Furniture Auction, both places being in the city of Raytown, Missouri, without being licensed to do so under the provisions of Chapter 44,

Title 18, United States Code, all in violation of sections 922(a)(1) and 922(a), Title 18, United States Code."

On Wednesday, September 13, 1972, the day his jury trial on this charge was to commence, defendant Williams appeared with his counsel before Judge John Oliver of this Court and changed his plea from not guilty to nolo contendere, with Judge Oliver making the customary and required record.

On December 11, 1973, the Government filed the present complaint seeking forfeiture of some 57 handguns, "long guns" (shotguns) and ammunition which it earlier had seized at respondent's home, pursuant to a search warrant. The Government charges in effect that these guns which it seized were used by respondent Williams in the commission of the above criminal offense of engaging in the business of dealing in firearms without being licensed to do so.

By way of defenses to this forfeiture action respondent asserts (1) Entrapment, (2) Williams was not a "dealer" within the meaning of the statute; (3) Gun collecting was Williams' hobby; (4) Williams had no intent to violate the firearms laws; (5) His wife co-owned the guns; (6) His daughter expected to inherit them on her parents' death; (7) There was no federal conviction because Williams had plead nolo contendere and had been placed on probation; and (8) That the evidence does not show that these seized guns were used in violation of federal criminal law. He asks that these "illegally seized" guns be returned to him together with the ammunition seized with them.

The case was tried to the Court on July 28, 1976. The following statement of facts found by the Court is supported by the evidence adduced at the trial:

Sometime prior to April, 1972, defendant came to the attention of Government agents who suspected he was selling firearms without being licensed to do so.

On March 14, 1972, Special Agent Roy Brown of the Alcohol, Tobacco and Firearms Agency, went to defendant's home in Raytown, Missouri, and according to Special Agent Brown's testimony, after indicating he was interested in buying some guns, defendant took him into his basement where a large number of guns were on display and told him the guns were for sale. Defendant also showed some handguns that defendant might sell. Most of the guns in view had what appeared to be price tags on them. Special Agent Brown bought a .22 semi-automatic pistol for $22.00 and left.

On March 17, 1972, Special Agent Brown and Special Agent Donald R. Smithson, also with the Alcoholic, Tobacco and Firearms Agency, went to defendant's home and learned he was at Andy's Furniture Auction. They contacted him and he returned to his home. Special Agent Smithson advised defendant he was interested in purchasing handguns. Defendant showed him three handguns and some discussion of their sales prices followed. Special Agent Smithson purchased a Smith and Wesson revolver from defendant for $85.00. There was no price tag on it. They were shown a pearl handled revolver by defendant who priced' it to them for $300.00. However, they did not then purchase it. Special Agent Smithson told defendant he was interested in buying some guns, handguns and long guns, to resell for profit.

On March 22, 1972, Special Agents Smithson and Brown again went to defendant's home. They were shown a number of guns by defendant and purchased from defendant a .32 caliber chrome-plated Iver Johnson handgun.

On April 12, 1972, both agents went to Andy's Furniture Auction and met with defendant. They advised defendant they were interested in buying a couple of handguns. Defendant took them to the back of the store and showed them a .45 caliber and a .32 caliber handgun. Defendant quoted them a price of $60.00 for the .32 caliber pistol and $70.00 for the .45 caliber pistol. The agents bought the two handguns at those prices. Special Agent Smithson then expressed an interest in buying a shotgun. Defendant indicated he could get one at a low price.

On April 16, 1972, the agents returned to defendant's home. After a short discussion, defendant sold Special Agent Smithson a .12 gauge shotgun for $60.00 and also sold to Special Agent Brown a revolver for $135.00.

On April 18, 1972, the agents again returned to defendant's home. Special Agent Smithson asked to buy a .12 gauge shotgun with a price tag on it of $150.00. Defendant sold it to him for $150.00. Defendant was asked about the "price tags" on most of the guns displayed in the basement. He said he kept the tags to indicate firearms he had sold. He displayed a box of the type shotgun shells come in, and it was pretty well filled with such tags. Another similar box was also pretty well filled with tags. He said that's how many guns he had sold. Smithson then asked defendant if all the guns in the basement were for sale. Defendant then told them that all of the firearms on display in the basement were for sale, except two, and he might sell those two if the price was right. Defendant said he also sold ammunition. There was a lot of it in view in the basement. He sold a box of shotgun shells to Brown.

Following the April 18, 1972, visit the agents, based on their personal knowledge, obtained a search warrant for the guns here in question. There is no viable attack on the validity of the search warrant, and it is a valid one. Under the authority of the search warrant some 57 guns and a substantial number of .12, .16 and .20 gauge shells were seized, together with the two boxes of price tags. It is these 57 guns which the Government seeks to have forfeited.[1]

Defendant Williams testified on his own behalf as did his wife. He stated he was 72 years old, had a second grade education and had retired several years ago from his work as a carpenter. He testified that gun collecting was his hobby of some 40 years, and that over the years he obtained many guns as pay for his carpentry work. He stated,

"I used to trade guns." These guns were to be his estate for his wife and on their death were to go to his daughter. He collected guns as an investment rather than buying stocks and bonds which he didn't understand. He stated, "I don't think I've sold a half-dozen guns in my life except those I sold to (the government agents)." He thinks a couple or three of the guns "may be antiques". He wrote and put the tags on the guns just so he and his wife would be aware of their current value. He denied saying that all but 2 of the guns were for sale. He said there were about 9 cases of shotgun shells in the basement that were seized. Defendant's wife stated she thought all the guns were really hers as they were her inheritance and represented defendant's and her joint savings.

This action is based on 18 U.S.C. 924(d) which provides that "any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter (Firearms) . . . shall be subject to seizure and forfeiture . . ." It is a civil action, remedial in nature, and because it involves forfeiture is not a favored remedy. The facts of the particular case must fall within the conduct proscribed by the pertinent statute involved.

In the instant case it is undisputed that defendant pled nolo contendere to the charge of unlawfully engaging in the business of dealing in firearms at his home and at Andy's Furniture Store without being licensed to do so. However, in the context of this case it is not a controlling question as to whether defendant suffered a conviction as a result of his nolo contendere plea. What is pertinent is the evidence in this case which shows that from at least March 14, 1972, through April 18, 1972, defendant Williams willfully, knowingly and illegally engaged in the business of dealing in firearms at his residence and at Andy's Furniture Auction; that he was an unlicensed dealer in firearms during that time, and

1. It is clear from the evidence that these 57 guns did not include the mentioned two guns that defendant had indicated were possibly for sale only if the price was right. It is also clear from the evidence taken as a whole that the 57 guns seized were the guns displayed by defendant in his basement and in his home. He said these were his "hunting guns".

that the seized guns and ammunition which are the subject of this forfeiture action were used in his illegal gun dealership activities. To summarize, these guns and ammunition were involved in, used, and intended to be used in his unlicensed gun dealership activities proscribed by Chapter 24 (Firearms), 18 U.S.C. Sections 924 through 928.[2]

▮▮▮ Turning to defendant's entrapment contention, even assuming the criminal entrapment doctrine is carried over to civil actions for forfeiture, defendant's contention fails for two reasons. First, the facts in evidence in this case do not show any entrapment occurred. Second, by pleading nolo contendere in the criminal case, defendant waived any entrapment defense that he might otherwise have.

▮▮▮ Defendant's asserted defense that the evidence does not show that he was a firearm "dealer" within the meaning of the firearm statutes is likewise without merit. As stated in *United States v. Powell*, 513 F.2d 1249 (8th Cir. 1975): "As defined in 18 U.S.C. § 921(a)(11) and used in 18 U.S.C. § 922(a)(1) there appears to be little doubt that 'dealer' means anyone who is engaged in the business of selling firearms, and that 'business' is that which occupies time, attention and labor for the purpose of livelihood or profit. *United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971). Accord, *United States v. Williams*, 502 F.2d 581, 583 (8th Cir. 1974); *United States v. Wilkening*, 485 F.2d 234, 235 (8th Cir. 1973). Likewise, it is clear that dealing in firearms need not be a defendant's primary business or that he must make a certain amount of profit from it in order to be found guilty of a Section 922(a)(1) violation." In the instant case the offerings for sale and the sales ranging over a period of time from March 14, 1972, through April 18, 1972, demonstrate defendant was during that time a dealer in firearms. The evidence as a whole shows that

it was the seized guns and ammunition that were on sale by defendant as an unlicensed dealer in firearms during that period of time.[3] See *United States v. One Assortment of 12 Rifles and 21 Handguns*, 313 F.Supp. 641, (N.D.Fla.1970). These were the firearms and ammunition that were involved in and that were used in violation of the Firearms Act, for which violation defendant pled nolo contendere in the Federal District Court where Judge Oliver presided. The evidence further shows that defendant's gun selling activity was a business which occupied a substantial portion of his time, and of his labor, and that he sought a profit to enhance his livelihood. He obtained many of the firearms for carpentry work he performed. He is retired and on Social Security. It is only natural that he needed to sell his firearms to obtain money to live on. He kept close track of the current value of his guns so as to be sure they were not disposed of below the market price, and if he died, that his widow likewise would know their true market value.

▮▮▮ It is no defense to the forfeiture action that defendant did not have the specific intent "to break the law" by engaging in the business of selling firearms. As declared by the Second Circuit Court of Appeals in *United States v. 16,179 Moslo Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463, 466 (2d Cir. 1971); cert. den. 404 U.S. 983, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971) "(defendant) further argues that even though this is a civil action the government must show some element of scienter or guilty knowledge on his part. We do not agree. As the proper purpose of the statute is to keep such potentially dangerous weapons out of the hands of unlicensed dealers, we can see no reason for requiring scienter or for reading into the statute what is not there." Additionally, there is evidence in the record sufficient to persuade that defendant knew that dealers in firearms must be licensed.

---

2. It is even possible to suffer a civil forfeiture under 18 U.S.C. 924(d) if the defendant stands trial and is acquitted on the criminal charge. See, *Epps v. Bureau of Alcohol, Tobacco and*

*Firearms*, 375 F.Supp. 345 (D.C.Tenn.1973), affirmed 495 F.2d 1373.

3. The statute also proscribes the unlicensed dealing in ammunition.

Even if he mistakenly thought he was not a dealer, it is no defense. Compare *United States v. Powell*, 513 F.2d 1249 (8th Cir. 1975).

There is no merit to defendant's suggestion that his wife owned or co-owned the firearms. He testified he acquired them in return for his carpentry work. He treated them as his property. He performed some work to improve and preserve them. He sold them as one would his own property. The circumstances in totality do not credibly support a finding other than that defendant owned the guns in question. Defendant did testify he had three guns that were not his, but he never identified those guns nor to whom they belonged. The other evidence convinces that all the seized guns and ammunition belonged to defendant. At best, his daughter and wife had hopes or expectations that on his death the guns would still be a part of his estate to be inherited.

Nor does the credible evidence show any of the guns were "antiques". Even if three of the 57 guns were antiques, it does not change the fact that defendant was an unlicensed firearm dealer within the meaning of the statute.

For the above reasons the Court finds all of the issues of fact against defendant and in favor of plaintiff. Forfeiture of the seized guns and ammunition in question to the United States is hereby declared and ordered. A list of the forfeited guns and ammunition is attached hereto and made a part of the forfeiture order.