UNITED STATES of America, Appellee,

v.

Lloyd PERKINS, Appellant.

UNITED STATES of America, Appellee,

v.

Lowell W. WHEELER, Appellant.*

Nos. 80–1532, 80–1533.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1980.

Decided Jan. 9, 1981.

Daniel P. Reardon, Jr., Webbe & Reardon, St. Louis, Mo., for appellant.

---

* *Editor's Note:* The opinion of the United States Court of Appeals, Ninth Circuit in County of *Kern v. Civil Aeronautics Board* published in the advance sheets at this citation (633 F.2d 856), was withdrawn from the bound volume at the request of the court.

Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief; Pamela H. Bucy, Asst. U. S. Atty., St. Louis, Mo., argued, for appellee.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Lowell Wheeler was convicted by a jury in the United States District Court, Eastern District of Missouri,[1] of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1) (Count I) and for knowingly transferring a sawed-off shotgun in violation of 26 U.S.C. §§ 5861(e) and 5871 (Count IV). Lloyd Perkins was convicted in the same trial on Count III of possession of two shotguns as a felon in violation of 18 U.S.C. App. § 1202(a)(1). Wheeler was sentenced to four years on Count I and six years on Count IV. Perkins was sentenced to two years on Count III.

Appellant Wheeler appeals contending the jury instruction that required no minimum number of transactions to establish dealership in firearms was error and that there was an insufficient number of transactions for the jury to conclude he was a dealer within the contemplation of 18 U.S.C. § 922(a)(1). He also claims it was error for the district court to join in the same trial the counts on which he was convicted. Appellant Perkins claims there was insufficient evidence for the jury to find that the guns that were in his possession had traveled in interstate commerce. We affirm the district court on all grounds urged on appeal.

FACTUAL BACKGROUND

On January 22, 1979, Agent Victor J. Herbert and Special Agent Diane Regala, of the Bureau of Alcohol, Tobacco & Firearms, commenced an undercover investigation in the area around Poplar Bluff, Missouri. On that day the agents accompanied a confidential informant, Lloyd Freeman, to the Wheeler Inn Tavern, operated by appellant Wheeler. Informant Freeman introduced the agents to appellant Wheeler. Informant Freeman told appellant Wheeler that Agent Herbert wanted to purchase a shotgun. Appellant took Agent Herbert to a red pickup truck in the parking lot behind the tavern. Appellant Wheeler introduced an individual sitting on the passenger's side of the truck as appellant Perkins. Wheeler said Perkins would also be involved in the deal. Wheeler removed a shotgun from the passenger's side of the truck and handed it to Agent Herbert. Wheeler and Herbert negotiated a price of $100, and the agent placed the gun in the undercover car. Wheeler and Herbert returned to the tavern where Agent Regala paid appellant Wheeler for the gun.

On February 6, 1979, Agents Herbert and Regala returned to the tavern. They identified themselves to appellant Wheeler as the persons who had purchased the shotgun on January 22. Appellant Wheeler said he remembered Agent Herbert but that he did not have any more guns for sale. After discussing the shotgun that the agents purchased on January 22, Wheeler said persons occasionally came into his tavern to sell him guns, which he would resell. The agent told Wheeler he and the other agent were from St. Louis but came to the Poplar Bluff area regularly. Wheeler then told the agents that when they were in the area, they should stop and see if he had any guns for sale.

On March 6 the agents returned to the tavern and asked whether Wheeler had any guns for sale. Wheeler said he did not have any for sale, but that a friend had "a couple" of shotguns for sale. Wheeler identified the friend as the same man who was in the red pickup truck on January 22, when the original purchase was made. Wheeler told Agent Herbert to go behind the tavern to wait for his friend. Appellants Wheeler and Perkins then joined Agent Herbert. Wheeler introduced Agent Herbert to Perkins. Perkins said that he had two stolen shotguns for sale, but that the stolen nature of the guns should not matter because the

---

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri, presiding.

agent was from St. Louis and the guns had been stolen in Poplar Bluff. Perkins led both agents to his home where he showed Agent Herbert the shotguns. After agreeing upon a price of $100, the agents purchased the guns. Perkins said he purchased many guns, some of which were stolen. He said all were in good condition and that the next time Agent Herbert was in the area, he should contact Perkins or Wheeler.

On March 27, Agents Herbert and Regala returned to the tavern. They spoke with Wheeler, who said that he did not have any guns for sale but that he had a friend who would sell them guns. Wheeler described four guns that were for sale. Wheeler also wrote down the price and description of each. Wheeler drove Agent Herbert to Wheeler's home and showed him the four guns. The agent removed the shells that were still in one gun and purchased all four guns.

Later that same day Wheeler approached Agents Herbert and Regala, who were still seated at a table in the tavern. Wheeler inquired whether they wanted to purchase a rifle and a sawed-off shotgun. Herbert said he was interested, and Wheeler instructed his employee, Danny Howell, to get William Strange, who had guns. Approximately one-half hour later, Howell returned with Strange. Howell and Strange approached the table where Wheeler and the agents were sitting, handed Wheeler a set of keys and said the guns and a bag of ammunition were in the car. Wheeler and Agent Herbert went out to the parking lot behind the tavern. Shortly thereafter, Strange joined them. Wheeler opened the trunk of the same car Wheeler and Agent Herbert had taken earlier in the day to Wheeler's house to purchase guns. A rifle and a sawed-off shotgun were in the trunk. Agent Herbert bought the guns and ammunition for $60. Agent Herbert also paid Wheeler $5 for Howell, who brought Strange and the guns to the tavern.

On April 19, Agents Herbert and Regala made their last purchase of firearms. On

that date Agent Herbert telephoned Wheeler at the tavern and asked whether he had anything for sale. Wheeler said he had a revolver and told the agent he would meet him at the Starlight Lounge, which was Wheeler's new lounge. Wheeler gave the agents directions to the new lounge. The agents drove to the lounge, and Wheeler was standing in front with several people. Wheeler approached the driver's side and handed Agent Herbert a brown paper bag. Wheeler said the gun was in the bag. Agent Herbert removed the cartridges from the gun. The agent paid Wheeler $60 for the gun. Wheeler wrote the address of the new lounge, his telephone number, and his name on a piece of paper and gave it to the agents. He told Agent Herbert to call him the next time he was in the area, and perhaps he would have some more guns for sale when he had his new business in operation.

A grand jury returned a five-count indictment.[2] Count I charged appellant Wheeler with dealing in firearms in violation of 18 U.S.C. § 922(a)(1). Count II also charged appellant Perkins with dealing in firearms in violation of 18 U.S.C. § 922(a)(1). (Perkins was acquitted on this count.) Count III charged appellant Perkins with possession of a firearm as a convicted felon in violation of 18 U.S.C. App. § 1202(a)(1). Count IV charged appellant Wheeler with transferring a shotgun with a barrel length of less than 18 inches without an application for a license to do so, in violation of 26 U.S.C. §§ 5861(e); 5871.

At trial, the prosecution presented the evidence discussed previously which showed that appellant Wheeler sold eight guns to Agents Herbert and Regala between January 22 and April 19, 1979. The evidence indicated that at least one of these guns was a sawed-off shotgun. It was also shown that neither appellant had a license to deal in firearms, that Wheeler did not have a license to sell a sawed-off shotgun, and that Perkins was a convicted felon. Furthermore, Perkins stipulated that the

2. Count V charged William P. Strange with possession of a firearm as a convicted felon in violation of 18 U.S.C. App. § 1202(a)(1).

guns he sold were manufactured outside the state of Missouri.

Wheeler admitted that he had sold Agent Herbert a shotgun on January 22, 1979. Even though he acknowledged that it was cut off when he sold it, he claimed he did not cut it off. Wheeler also admitted selling the four guns on March 27, contacting Strange, and directing Howell to bring Strange and the gun. He claims he did not receive any money for the transaction and that the guns were Strange's. Appellant Perkins admits that he sold two guns to the agents on March 6, 1979, and that he assisted Wheeler on January 22, 1979. However, Perkins claimed he had his guns for hunting and that he had contacted his parole officer to make certain he could hunt while on parole.

At trial, John E. Maddock and Thomas N. Spencer, both of Poplar Bluff, Missouri, said their homes had been burglarized in December 1978, and each identified a gun as being taken from their homes.

## DISCUSSION

Appellant Perkins claims that it was not shown that the guns he sold were involved in interstate commerce. The relevant statute, 18 U.S.C. App. § 1202(a)(1), states:

(a) Persons liable; penalties for violations. Any person who (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony * * * and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act * * * any firearm shall be fined * * * or imprisoned * * *.

Thus, the gun must have been involved in interstate commerce. However, under the holding of *Scarborough v. United States*, 431 U.S. 563, 572–77, 97 S.Ct. 1963, 1967–70, 52 L.Ed.2d 582 (1977), the relationship of the gun to interstate commerce needs to be only minimal. "Congress sought to reach possessions broadly, with little concern for when the nexus with commerce occurred . . . there is no question that Congress in-

tended no more than a minimal nexus requirement." *Id.* at 577, 97 S.Ct. at 1970; "* * * [W]e see no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce." *Id.* at 575, 97 S.Ct. at 1969. *United States v. Gardner*, 564 F.2d 799, 801 (8th Cir. 1977).

In light of Perkins' stipulation that the gun was manufactured out of the state of Missouri, there is no error in finding that this sale within Missouri involved a gun that had moved in interstate commerce.

Appellant Wheeler challenges Judge Wangelin's jury instruction on the charge of "illegal dealership in firearms" because the instruction did not require a minimum number of transactions to establish dealership. The instruction was as follows:

The term 'dealer' means anyone who is engaged in any business of selling firearms or ammunition. A business is an activity which occupies a person's time, attention and labor for the purpose of livelihood or profit. One may be engaged in the business, even though the business does not require all or even a substantial part or portion of his working time. Nor is it necessary to show that a profit was actually made. The statute requires no minimum number of sales, dollar volume of sales or number of employees to constitute engaging in business.

A business is an activity which occupies a person's time, attention and labor with some regularity or continuity for the purpose of livelihood or profit. One may be engaged in a business even though the business does not require all or a substantial portion of his working time, nor is it necessary to show that a profit was made.

Appellant contends that there were only three purchases of guns (January 22, March 27 and April 19, 1979) and that this number is insufficient to establish a dealership. Given the proper instruction, the jury would *not* have convicted appellant.

At the outset we note that this court has consistently upheld the definitions of dealer and business embodied in the district court's instruction. *United States v. Pow-*

*ell,* 513 F.2d 1249, 1250–51 (8th Cir.), *cert. denied,* 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77 (1975); *United States v. Williams,* 502 F.2d 581, 582–83 (8th Cir. 1974). In *Williams* we agreed with our brethren on the United States Court of Appeals for the Seventh Circuit in *United States v. Gross,* 451 F.2d 1355 (7th Cir. 1971), that the proper focus in ascertaining "business" is whether the pursuit "occupies time, attention and labor for the purpose of livelihood or profit" by the person and not merely the number of sales. *United States v. Williams, supra,* 502 F.2d at 583. The instruction given by the trial court was consistent with this definition. We hold the trial court did not err in giving this instruction.

■ Appellant also challenges the sufficiency of the evidence in finding dealership. We cannot say that at least three transactions involving eight guns does not satisfy the standard. In light of the number of guns and transactions,[3] the other evidence submitted in the case, and our standard that the jury verdict must be sustained if there is substantial evidence to support it, taking the view most favorable to the jury verdict and accepting all reasonable inferences in support of it, we hold there was sufficient evidence to support the jury finding. *United States v. Cooper,* 596 F.2d 327, 329 (8th Cir. 1979); *United States v. Boberg,* 565 F.2d 1059, 1062 (8th Cir. 1977); *United States v. Frazier,* 545 F.2d 71, 74 (8th Cir. 1976), *cert. denied,* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798.

Finally, appellant Wheeler contends that his conviction for transferring a sawed-off shotgun should be vacated because the joinder of this count with the dealership count was prejudicial. He contends that it was nearly impossible for the jury to find him guilty of dealing in guns and not find him guilty of transferring the sawed-off shotgun. Wheeler alleges that when the sawed-off shotgun was transferred on March 27, 1979, he was just an observer, even though he approached the agents about the pur-

chase and had the gun and its owner brought to the tavern in his car by one of his employees.

■ Appellant failed to object to the joinder of the counts before, during, or at the close of the case. He therefore waived his right to raise this issue on appeal. *United States v. Bowman,* 602 F.2d 160, 163 (8th Cir. 1979); *United States v. Jordan,* 602 F.2d 171, 172–73 (8th Cir.), *cert. denied,* 444 U.S. 878, 100 S.Ct. 165, 62 L.Ed.2d 107 (1979).

■ Even if we were to reach the merits of appellant's contention, under the plain error rule, we would not find the joinder "affected substantial rights resulting in a miscarriage of justice." *United States v. Carlson,* 547 F.2d 1346, 1361 n.16 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). Fed.R.Crim.P. 8(a) permits joinder of offenses in the same indictment if the charges "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." After reviewing the facts of the case, we conclude that the transfer of the sawed-off shotgun was an integral part of the transactions shown by the government in proving its case. The acts were not only of similar type, but can be viewed as being a part of the broad act of dealership.

In view of the discretion committed to the district courts in joining counts and the lack of prejudice from the joinder, we conclude the trial court did not abuse its discretion in joining Counts I and IV of the indictment. *United States v. Lewis,* 547 F.2d 1030, 1033 (8th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977); *United States v. Riley,* 530 F.2d 767, 770 (8th Cir. 1976).

Affirmed.

---

**3.** In *United States v. Powell,* 513 F.2d 1249, 1250 (8th Cir. 1975), the sale of six guns was found to be sufficient to establish dealership, and in *United States v. Williams,* 502 F.2d 581, 582 83 (8th Cir. 1974), five transactions were found to be enough to establish dealership.