Linwood E. SIMMONS, Jr., Petitioner,

v.

POLICE AND FIREFIGHTERS'
RETIREMENT AND RELIEF
BOARD, Respondent.

No. 82–1363.

District of Columbia Court of Appeals.

Argued Aug. 24, 1983.

Decided July 23, 1984.

James W. Pressler, Jr., Washington,
D.C., for petitioner.

Lutz Alexander Prager, Asst. Corp.
Counsel, Washington, D.C., for respondent.
Judith W. Rogers, Corp. Counsel, Washington, D.C., at the time the brief was filed,
Charles L. Reischel, Deputy Corp. Counsel,
and Gary S. Freeman, Asst. Corp. Counsel,
Washington, D.C., were on the brief for
respondent.

Before NEBEKER, MACK and TERRY,
Associate Judges.

PER CURIAM:

The District of Columbia Police and Firefighters' Retirement and Relief Board ("the
Board") found that petitioner-annuitant had
been restored to an earning capacity pursuant to D.C.Code § 4–620(a) (1981)[1] and ter-

---

1. Section 4–620(a) provides in pertinent part:
   (a)(1) If any annuitant retired under § 4–615
   or 4–616 ... is restored to an earning capacity
   fairly comparable to the current rate of com-

pensation of the position occupied at the time of
retirement, payment of the annuity shall cease:
\* \* \* \* \* \*

minated his disability annuity. The Board further found that petitioner willfully furnished materially false income information and had therefore forfeited all rights to his disability annuity pursuant to D.C.Code § 4–620(c)(5)(B) (1981).[2] Petitioner here challenges both of these findings on the ground that neither was supported by substantial evidence. We affirm.

## I

Petitioner, Linwood E. Simmons, Jr., was an officer of the District of Columbia Metropolitan Police Department ("MPD") from October 1960 until he retired on disability in September 1968. In April 1982, the MPD Internal Affairs Division ("IAD") notified the Board that petitioner had been restored to an "earning capacity" within the meaning of D.C.Code § 4–620(a) (1981) for the year 1980 and that, therefore, it was necessary to terminate his retirement benefits. In August 1982, the Board conducted a hearing to determine whether petitioner's income level was so restored and whether petitioner willfully furnished materially false information with respect to his 1980 income.

After the hearing, the Board found: (1) the § 4–620(a)(2) earning limitation for petitioner—80% of the current rate of compensation of the position occupied immediately prior to retirement ($21,910)—amounted to $17,528; (2) petitioner's earned income in 1980 was $18,301.51—$16,461.51 from wages as Chief of Police in North Charleston, South Carolina and $1,840 from self-

employment in the sale of firearms; and therefore, (3) petitioner's 1980 earnings ($18,301.51) exceeded the statutory income limitation ($17,528) by $773.51. Thus, the Board concluded that petitioner had been restored to an "earning capacity" within the meaning of D.C.Code § 4–620(a) (1981). The Board further concluded that petitioner deliberately withheld from his notarized "Disability Retiree Employment Questionnaire and Report of Income" for 1980 the fact that he earned additional income in 1980 of $1,840 from self-employment in the sale of firearms. Therefore, pursuant to D.C.Code § 4–620(c)(5)(B) (1981), the Board ordered the termination of his disability annuity without any right of reestablishment, effective forty-five days later.

## II

We reject appellant's challenge to the evidence which supports the Board's finding that appellant earned $1,840 in 1980 from self-employment in the sale of firearms. This finding was based on information supplied to an IAD investigator by an agent of the Bureau of Alcohol, Tobacco and Firearms ("BATF") which was gathered by the BATF during a criminal investigation of petitioner concerning the illegal sale of firearms.

Petitioner, conceding that hearsay may be admissible in administrative proceedings,[3] claims that this hearsay evidence is not reliable, probative or substantial and, therefore, does not provide support for the Board's findings and conclusions. D.C.

---

(C) Forty-five days from the date of the determination that he is so restored;

&ast; &ast; &ast; &ast; &ast; &ast;

(2) Earning capacity shall be deemed restored if ... in any calendar year in teh case of an annuitant who was an officer or member of the Metropolitan Police force ... the income of the annuitant from wages or self-employment or both shall be equal to at least 80 per centum of the current rate of compensation of the position occupied immediately prior to retirement.

2. Section 4–620(c)(5)(B) provides in pertinent part:

Any annuitant ... who willfully furnishes materially false information with respect to his

income in any statement required to be submitted under such subparagraph shall forfeit all right to his disability annuity.

3. D.C.Code § 1–1509(b) (1981) provides in pertinent part that "[a]ny oral and any documentary evidence may be received, but ... every agency, shall exclude irrelevant, immaterial, and unduly repetitious evidence." *See Richardson v. Perales,* 402 U.S. 389, 402–06, 91 S.Ct. 1420, 1427–30, 28 L.Ed.2d 842 (1971); *General Railway Signal Co. v. District Unemployment Compensation Bd.,* 354 A.2d 529, 531 n. 3 (D.C.1976); *Wallace v. District Unemployment Compensation Bd.,* 294 A.2d 177, 179 (D.C.1972).

Code § 1–1509(e) (1981); *see Kegley v. District of Columbia*, 440 A.2d 1013, 1018 (D.C.1982). We disagree.

If hearsay evidence is found to be reliable and credible, it may constitute substantial evidence. *Johnson v. United States*, 202 U.S.App.D.C. 187, 190–91, 628 F.2d 187, 190–91 (1980). This is especially true where the evidence is uncontradicted. *Wallace v. District Unemployment Compensation Board, supra* note 3, 294 A.2d at 180.

■ The hearsay relied on consists of statements and sworn affidavits of individuals who allegedly purchased firearms from petitioner as well as copies of checks and a bill of sale linking petitioner with firearms sales.[4] This evidence linked petitioner to nine separate firearms sales involving a total of approximately twenty-six firearms in 1980 alone.

The challenged statements were made by disinterested witnesses. In many instances, the statements were accompanied by supporting documentation, both checks made out to and endorsed by petitioner and a bill of sale signed by petitioner. For the most part, they were also consistent with each other in that they described the same pattern of behavior by petitioner. One of the statements was consistent with petitioner's plea of guilty to two counts of illegal firearms sales. Finally, we note that petitioner had notice of the subject matter of the hearing and received copies of the challenged evidence several months prior to the hearing; therefore, he cannot claim surprise. In light of these circumstances, we conclude that the hearsay evidence was probative and reliable, and could be relied upon by the Board as evidentiary support for its finding and conclusions. *See Johnson v. United States, supra*, 202 U.S.App.D.C. at 191, 628 F.2d at 191.

We also reject petitioner's claim that the evidence was insufficient to support the Board's conclusion that he was "self-employed" in the sale of firearms. The evidence presented linked petitioner to nine separate sales of about twenty-six firearms in 1980 alone. It showed that petitioner expended time, attention and labor, with some regularity, in selling firearms; that he both approached and was approached by potential buyers; and that his course of conduct extended both prior and subsequent to 1980. In addition, petitioner pleaded guilty to two counts of 18 U.S.C. § 922(a)(1) (1976) which reads in pertinent part: "(a) It shall be unlawful—(1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of ... dealing in firearms ...." Under this statute, "the proper focus in ascertaining 'business' is whether the pursuit 'occupies time, attention and labor for the purpose of livelihood or profit' by the person and not merely the number of sales." *United States v. Perkins*, 633 F.2d 856, 860 (8th Cir.1981) (quoting *United States v. Williams*, 502 F.2d 581, 583 (8th Cir.1974)); *United States v. Gross*, 451 F.2d 1355 (7th Cir.1971). Thus, the evidence presented was sufficient to support the conclusion that petitioner was "self-employed" in the sale of firearms.

III

■ The same evidence, and the legitimate inferences flowing therefrom, support the Board's conclusion (pursuant to D.C.Code § 4–620(c)(5)(B) (1981)), that

[there was] a deliberate and willful attempt on the part of [petitioner], to be deceptive and withhold material information necessary to determine the accurate amount of income received by him during the year 1980. The [petitioner's] action resulted in his submission of an intentionally incomplete and false statement with regard to the total amount of income earned and received by him in 1980.

Petitioner testified at his hearing that the income he admitted having received from the sale of firearms in 1980 (pursuant to his plea of guilty to two counts of the criminal indictment) was not "reportable"

4. Following this investigation, petitioner was indicted by a Federal Grand Jury on 21 counts of firearms violations. Petitioner pleaded guilty to two counts of selling firearms without a license in violation of 18 U.S.C. §§ 922(a)(1), 924(a) (1976).

to the Retirement Board because it purportedly represented a capital loss for federal income tax purposes. His attempt in this court to rebut the Board's finding of willfulness is not persuasive. "Income" for the purposes of D.C.Code § 4–670(a) (1981) is the annuitant's "total compensation" or "gross income." *Roberts v. Police and Firemen's Retirement and Relief Board,* 412 A.2d 47, 50 (D.C.1980). On this record we cannot conclude that petitioner could have thought he was complying with the law in failing to report income other than salary. Even if we assumed the relevancy of tax reporting requirements, neither the income tax returns nor the audit reports [5] supplied by petitioner support his claim that the Internal Revenue Service made a determination that he was not in the business of selling firearms in 1980 or that the income from his sales of firearms should be taxable only as capital gains. We are satisfied that the Board's findings rest upon substantial evidence and that its ruling therefore must be

*Affirmed.*

---

5. There is nothing in the 1980 report to indicate that the auditor knew about or considered income from gun sales during 1980. The 1981 report merely disallowed petitioner's claim that he was entitled to a *long-term* capital gain from the purported sale of a "gun collection" in 1981 —noting that the sale should be treated as a *short term* capital gain "since you have not verified the holding period of this property."