UNITED STATES of America, Appellee,

v.

Henry TARR, Defendant-Appellant.

No. 78–1035.

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1978.

Decided Dec. 20, 1978.

Lessing A. Kahn, Boston, Mass. with whom Carmen L. Durso, Boston, Mass. was on brief, for appellant.

James F. X. Dinneen, Asst. U. S. Atty., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Appellant, Henry A. Tarr, was convicted by a jury of aiding and abetting named principals, Anthony R. Grasso and Michael Ferrara, in violation of 18 U.S.C. § 922(a)(1) and 18 U.S.C. § 2 (Count II), and aiding and abetting the same principals in the unauthorized transfer of a machine gun in violation of 26 U.S.C. § 5861(e) and 18 U.S.C. § 2 (Count IV). Both counts were predicated on the same set of facts.

Three issues are raised on appeal:

(1) whether the evidence was sufficient for a conviction on Counts II and/or IV;

(2) whether testimony by one of the government's witnesses as to a post-arrest statement of appellant was sufficiently prejudicial as to require a new trial; and

(3) whether attaching to Count II of the indictment by mistake a list of overt acts instead of to Count I (conspiracy count not involving appellant) requires a dismissal of Count II.

We summarize the facts keeping in mind that the evidence is to be construed in the light most favorable to the government. *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). On January 24, 1977, two undercover agents of the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury, James Markowski and William E. Ledwith, were conducting an investigation of the sale of firearms involving, among others, Anthony Grasso and Michael Ferrara. Agent Markowski met, by prearrangement, with Grasso and Ferrara in the back room of the Point of Pines Yacht Club in Revere, Massachusetts. It was anticipated that a machine gun would be delivered to them which they had agreed to sell to Agent Markowski in the belief that he was a genuinely interested buyer. Ledwith was acting as a surveillance agent and backup man for Markowski. He remained in the car in the Point of Pines parking lot after Markowski entered the building for the "meet" with Ferrara and Grasso.

Agent Ledwith testified to the following effect. A short time after the agents had arrived, a yellow Datsun sedan drove into

the parking lot and parked immediately adjacent to the passenger's side of the car in which Ledwith was seated. Appellant was the driver of the car, and there was another man with him. Almost immediately after appellant's arrival, a man about twenty-five years of age, wearing a blue plaid shirt, left the entrance to the Yacht Club and walked directly to the Datsun automobile. Appellant then got out of the car and met the man in the blue plaid shirt at the trunk of the car. Appellant, who was wearing a buckskin leather jacket, engaged in a brief conversation with the other man. He then proceeded to the front of the Datsun and removed from under the front seat a long shiny steel cylinder which appeared to Ledwith to be a clip for a gun. Appellant then went back to the rear of the car and handed the cylinder to the other man. He then opened the trunk of the Datsun and took out a cardboard carton with the words Crutches and Danbury on it. The box was sealed with white tape at both ends. Both appellant and the man in the blue plaid shirt looked into the box, which was then handed to blue plaid. An Italian looking man in a dark raincoat was also in the vicinity of the Datsun during this period, but he did not do or say anything. The man in the blue plaid shirt carried the box into the Yacht Club followed by appellant and the man in the black raincoat. All three then disappeared from Ledwith's view.

The salient points of Agent Markowski's testimony can be summarized as follows. He met Grasso and Ferrara in the poolroom of the Yacht Club and was told that the man with the machine gun would be there shortly. At 1:10 P.M., about ten minutes after his arrival, there was a knock at the door, which was opened by Grasso and the man in the blue plaid shirt came in carrying a box marked Danbury, Connecticut, and Crutches. At the time the door opened, Markowski observed an individual in a buckskin jacket standing directly in front of the door whom he identified at the trial as appellant. Grasso told the man in the blue plaid shirt to leave, and, after he did, the door was bolted. Grasso then took a Thompson submachine gun out of the box and handed it to Markowski for examination. There was some dickering about the price and the sum of $900 was agreed upon. Markowski then informed Grasso and Ferrara that he had to go outside to his car for the money. As he left the room, Markowski saw appellant standing in the same location as before in front of the door. After obtaining the money from Ledwith, he returned to the Club. Appellant was still standing in front of the poolroom door. Markowski examined the gun again, paid for it, and left. There was no testimony that he saw appellant when he left the last time with the machine gun. Appellant was arrested on May 16, 1977. Neither Grasso nor Ferrara were licensed to deal in firearms.

## I. Aiding and Abetting

The crux of the charge in Count II of the indictment is that appellant did aid and abet Grasso and Ferrara "engage in the business of dealing in firearms, in violation of Title 18, United States Code, Section 922(a)(1) [1] and Title 18, United States Code, Section 2." [2]

■ We must first determine the meaning of the words "engage in the business of dealing in firearms." In *United*

---

1. 18 U.S.C. § 922(a)(1):
 (a) It shall be unlawful—
 (1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce[.]

2. 18 U.S.C. § 2:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. As amended Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717.

*States v. Gross,* 451 F.2d 1355, 1357 (7th Cir. 1971), the court dealt with the meaning of the word "dealer" which is defined in 18 U.S.C. § 921(a)(11)(A) as "any person engaged in the business of selling firearms or ammunition at wholesale or retail." The court concluded: "There appears to be little doubt that 'dealer' means anyone who is engaged in *any* business of selling firearms, and that 'business' is that which occupies time, attention and labor for the purpose of livelihood or profit." This definition was approved by the Sixth Circuit in *United States v. Day,* 476 F.2d 562 (6th Cir. 1973). The words "to engage in the business of" strongly imply more than one isolated sale or transaction. *See United States v. Swinton,* 521 F.2d 1255, 1259 (10th Cir. 1975), in which the court held that a single sale, without more, would not have been sufficient to establish a violation of 18 U.S.C. § 922(a)(1). While we can conceive of a single transaction sufficiently large enough in number of guns and the price paid to constitute engaging in the business of dealing in firearms, ordinarily one sale will not be sufficient to meet the statutory requirement. The use of the word "dealing" connotes a regular course of conduct carried on over a period of time or, at least, on more than one or two unrelated occasions.

We next determine what the general standard is for aiding and abetting. The classic definition adopted by the Supreme Court was first enunciated by Learned Hand:

In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." L. Hand, J., in *United States v. Peoni,* 2 Cir., 100 F.2d 401, 402.

*Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949).

In *United States v. Francomano,* 554 F.2d 483, 486 (1st Cir. 1977), we explored the requirements for proof of aiding and abetting:

The *Nye & Nissen* standard just quoted has been applied in many federal cases. In *Snyder v. United States,* 448 F.2d 716, 718–19 (8th Cir. 1971), the court reversed a conviction after quoting from *Nye & Nissen.* The court stated:

By far the most important element is the sharing of the criminal intent of the principal, and this is concededly difficult to prove: nevertheless the Government must prove this sharing of criminal intent. *Johnson v. United States, supra* [195 F.2d 673 (8 Cir. 1952),]; *Mack v. United States,* 326 F.2d 481, (8th Cir.), *cert. denied,* 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964).

Mere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt, *Ramirez v. United States,* 363 F.2d 33, 34 (9th Cir. 1966); *United States v. Joiner,* 429 F.2d 489, 493 (5th Cir. 1970); nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting. *Ramirez v. United States, supra; United States v. Garguilo,* 310 F.2d 249, 253 (2d Cir. 1962). Mere presence at scene of crime not evidence of guilt. *Hicks v. United States,* 150 U.S. 442, 447, 448, 14 S.Ct. 144, 37 L.Ed. 1137 (1893).

■ The vital element to be proven is intent. "An aider and abettor need not know every last detail of the substantive offense, *see Williams v. United States,* 308 F.2d 664, 666 (9th Cir. 1962), but he must share in the principal's essential criminal intent." *United States v. Sanborn,* 563 F.2d 488, 491 (1st Cir. 1977). In *United States v. McDaniel,* 545 F.2d 642 644 (9th Cir. 1976), the court held: "A defendant to be an aider and abettor must know that the activity condemned by the law is actually occurring and must intend to help the perpetrator." So also in *United States v. Newman,* 490 F.2d 139, 142–43 (3d Cir. 1974):

Unknowing participation is not sufficient to constitute an offense under the aiding

and abetting statute. Rather, the government must prove beyond a reasonable doubt that the defendant participated in a substantive crime *with the desire that the crime be accomplished. See United States v. Barfield, supra,* 5 Cir., 447 F.2d 85 at 88.

We now review the evidence in the light of these firmly established principles to determine whether the verdict should be sustained.

 It seems clear that the government established beyond a reasonable doubt that appellant knowingly delivered a machine gun to the man in the plaid shirt and saw him turn it over to Ferrara and Grasso. It was also conclusively proven that appellant saw Agent Markowski leave the room, return, and then take the weapon away with him. The inescapable conclusion from the fact of appellant's arrival at the Yacht Club with the gun, what he did there, and what he must have observed, is that he knew the machine gun he brought with him was going to be and was sold illegally to a third party. But a single sale, under these circumstances, does not establish that appellant knew that Ferrara and Grasso were engaged in the business of dealing in firearms, which is one of the elements of the crime charged in Count II. While there was evidence that Ferrara and Grasso were engaged in the business of dealing in firearms, this was independent of appellant and there was no evidence that appellant had knowledge of Ferrara's and Grasso's activities at other times and places. The government argues that appellant's continued presence in the Yacht Club after the delivery of the weapon to the man in the plaid shirt is the basis for a reasonable inference that he must have known that Ferrara and Grasso were gun dealers.[3] That is a quantum leap for which the facts afford no foothold. There was no evidence that appellant knew Ferrara and Grasso or that he talked to them at all, even by way of greet-

ings, on the day in question. Based upon the applicable law and the evidence, we find that there was no basis for finding that appellant aided and abetted Ferrara and Grasso to "engage in the business of dealing in firearms."

 We reach the entirely opposite result, however, as to Count IV. It charges that

on or about January 24, 1977 at or about Revere, in the District of Massachusetts, did transfer a firearm as defined in Title 26, United States Code, Section 5845, to wit, a Thompson .45 caliber sub-machine gun, model M1A1, serial number 720376, in violation of the provisions of Title 26, United States Code, Chapter 53, including, in particular, the provisions of Title 26, United States Code, Section 5812; all in violation of Title 26, United States Code, Section 5861(e) and Title 18, Section 2.

Sections 5812 and 5861(e) of Title 26, United States Code, makes it a crime for a person to transfer a machine gun without obtaining an application from the Secretary of the Treasury and fulfilling the application requirements. Appellant concedes, as he must, that the transfer statute does not require specific intent or scienter by a principal. *United States v. DeBartolo,* 482 F.2d 312 (1st Cir. 1973). We have no quarrel with appellant's contention that the jury must find in order to convict that the aider or abettor knew that the principal was committing the acts which constituted the elements of the crime. That does not mean, of course, that either the principal or aider and abettor must know, under the transfer statute, that those acts were illegal. *United States v. McDaniel, supra,* 545 F.2d 642. All that is required for proof of a violation is that the accused know that a machine gun is being transferred and intentional participation in such transfer. The legal requirements for the transfer of the ma-

**3.** The government's reliance on *United States v. Cowden,* 545 F.2d 257 (1st Cir. 1976), is misplaced. That case involved the transportation in interstate commerce of counterfeit checks. On an aiding and abetting charge, the statute, 18 U.S.C. § 2314, does not require knowledge as to the interstate transportation. All that is required is knowledge of the forged securities and the fact of interstate transportation. *Id.* at 263.

chine gun by appellant to Ferrara and Grasso and then to Agent Markowski were not met. There was evidence from which the jury could find beyond a reasonable doubt that appellant knew there was a machine gun in the box, that he delivered it to the man in the plaid shirt, and that he knew that Ferrara and Grasso sold it to a third party. This was sufficient for conviction under Count IV.

## II. *The Post-Arrest Statement*

Prior to and during the course of the trial, defense counsel moved to suppress post-arrest statements made by appellant. There was a lengthy hearing on the motion, outside the presence of the jury, and, at its conclusion, the court ruled "the Court orders that *these* post-arrest admissions by this defendant Tarr be suppressed as evidence." (emphasis added) There was no discussion during the suppression hearing of the specific statement to which Agent Ledwith testified.

The offending statement, which was made immediately following the suppression hearing, came into evidence in the following way. Agent Ledwith testified that a computer search of the Massachusetts Registry of Motor Vehicles license plate identification number was made to determine the registration of the Datsun that appellant had driven to the Yacht Club and that this search showed that the car was registered to appellant. Ledwith then volunteered the information that the records showed that the car was listed as a 1976 yellow Datsun sedan. Evidently, this was an error and the prosecutor, in an attempt to clarify the situation, asked: "Since causing that search to be conducted, sir, have you subsequently learned that the Datsun sedan was other than a 1976?" This question was objected to and excluded because it was leading. The prosecutor then asked, "Since causing that original search on the 24th of January, sir, have you obtained any other information with respect to the registration?" Ledwith responded, "Yes, sir, I have." The court then cautioned the witness to have the hearsay rule in mind. The next question was: "From what source did you receive this additional information, sir?" Then came the answer which appellant claims requires a new trial: "From two sources, sir. From the Registry of Motor Vehicles computer and from Mr. Tarr." That was an objection, which was sustained, based on the fact that this was a post-arrest statement that had been suppressed. The court then promptly instructed the jury as follows:

THE COURT: The Court strikes the last response of the witness, and orders the jury to disregard it and to let the reference to the defendant Tarr play no part whatever in you [*sic*] deliberations.

The Court will permit, because it is admissible, testimony by this witness with respect to what he may have learned from the Registry of Motor Vehicles Law Enforcement Automobile Processing System, that computerized system, which the witness referred to in a previous answer, but any reference to the defendant Tarr as being a source of this information is contrary to previous explicit, detailed rulings of the Court made in the jury's absence.

That evidence has been ruled to be inadmissible on grounds stated at great length, and it is important that the jury recall the Court's instructions to you from the very beginning of the case that the case must be decided on the basis of admissible evidence received in open court. The volunteered reference to the defendant in this witness's answer is not such evidence, and it must be disregarded by you jurors, and the trial of this case will continue only on the basis of this Court's directions to you that striking the reference to Mr. Tarr means that it must play no role in your deliberations in the case or in your considering the evidence in the case.

With that instruction, which I hope is a curative instruction, curative in the sense of curing an error which should not have been made, we will now resume the case, and you, please, Mr. O'Neil, direct the question to what was learned from the automatic data processing system.

Recognizing, perhaps, the obviously innocuous character of the testimony, appellant links the statement with the court's instructions and prior voir dire hearings to argue that his fifth and sixth amendment rights were violated. As we understand it, and it is difficult to follow, appellant's argument is that the statement by the witness triggered an instruction by the court that somehow alerted the jury to the fact that other admissions by the appellant had been suppressed and since the appellant did not testify, not only was he denied a fair trial, but his privilege against self-incrimination was violated. This is building a mountain out of a mole hill.

Appellant maintains that the rule of *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), has been violated because "it brought the existence and contents of inadmissible incriminatory admissions before the jury, patently subverting a procedure for determining admissibility constitutionally mandated since *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)." In *Jackson,* the Court held the New York practice of submitting the question of the voluntariness of a confession to the jury was unconstitutional because it violated the due process clause of the fourteenth amendment. The Court further held:

> It is both practical and desirable that in cases to be tried hereafter a proper determination of voluntariness be made prior to the admission of the confession to the jury which is adjudicating guilt or innocence.

*Id.* at 395, 84 S.Ct. at 1791.

The relevance of *Jackson* to the instant case is so remote as to be imperceptible. *Jackson* involved a confession. Here, we have an admission[4] whose relevancy was attenuated. Both undercover agents identi-fied appellant as being present during the sale and Ledwith testified that he drove the car to the parking lot, took the machine gun out of it and handed it to the man in the plaid shirt. The evidence as to ownership of the car would be corroborative at best.[5] Even without a curative instruction, we think this single statement was harmless error beyond a reasonable doubt. *United States v. Harrigan,* 586 F.2d 860, 863 (1st Cir. 1978); *United States v. Christian,* 571 F.2d 64, 69–70 (1st Cir. 1978). In order to convict, the jury had to believe Ledwith's testimony as to what he observed transpired in the parking lot. The statement as to ownership of the car had no bearing on that except as it might be reasonably inferred that the owner of a car would probably be driving it. The instruction by the court promptly cured any possible error. It was given promptly, it was complete, and it was clear, and we find nothing in it from which the jury might infer that appellant had made other admissions which had been suppressed.

Appellant has inundated his brief with cases (pages 17–21) holding that, if improperly admitted testimony has an irremedial prejudicial effect on the jury, withdrawal of the evidence is not sufficient to cure the harm done. We do not quarrel with the holdings of this formidable list of cases; we simply find that they are inapplicable because, under the circumstances here, there was no irremedial prejudicial effect on the jury.

### III. *The Indictment*

While our ruling as to Count II renders this issue moot, we must state that we found nothing wrong with the way the district court handled what was obviously a clerical error.

---

4. Appellant consistently uses the word admissio*ns* in his brief, and on page 21 states "the admissio*ns* referred to by the witness." It is one thing to argue the inferences and conclusion to be drawn from the facts; it is quite another to misstate them. The witness testified to one statement by appellant. He did not refer to admissions in the plural or by that specific name.

5. We realize that in the forfeiture action against the automobile the question of title was important, but the vital issue here was the possession and transfer of the machine gun and whether the car was registered to appellant or not was immaterial as to the counts charged in the indictment.

Since appellant was sentenced separately on each count, the verdict as to Count II and the judgment thereon are vacated.

*Reversed as to Count II, affirmed in all other respects.*