NATIONAL COALITION TO BAN
HANDGUNS, et al., Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO &
FIREARMS, et al.

No. 82–1624.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 22, 1983.

Decided Aug. 23, 1983.

S. Mark Tuller, Washington, D.C., with whom Charles H. Cochran, Washington, D.C., was on brief, for appellants.

William H. Briggs, Jr., Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Before EDWARDS, BORK and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Appellants in this case seek a declaratory judgment that the Gun Control Act of 1968 restricts the issuance of dealers' licenses to persons engaging or intending to engage in "bona fide firearms businesses." Because we find no requirement in the Act equivalent to the meaning which appellants would assign that term, we affirm the district court's entry of summary judgment dismissing the complaint.

## I

The National Coalition to Ban Handguns (NCBH) is an organization of churches, political groups and individuals. On April 17, 1980, NCBH petitioned the Bureau of Alcohol, Tobacco and Firearms (BTAF) "to take appropriate remedial action under Title I of the 1968 Gun Control Act, 18 U.S.C. § 921 *et seq.*, to restrict the issuance of federal firearms dealers' licenses to bona fide businessmen who are conducting a responsible, law-abiding business." Petition to the Bureau of Alcohol, Tobacco and Firearms (Apr. 17, 1980) at 1, Jt.App. at 19. On December 19, 1980, the director of BATF denied the petition for the asserted reasons that the legislative history of the Act indicated that the Secretary had limited authority in this area and that Congress was peculiarly "sensitive" to regulatory measures regarding gun control. Letter from G.R. Dickerson to S. Mark Tuller (Dec. 19, 1980) at 2, Jt.App. at 95.

On December 12, 1980, while awaiting BATF's reply to its petition, NCBH, together with the City of New York, the Connecticut Committee for Handgun Control, Inc., and several individuals including the Chief of Police of the City of New Haven, Connecticut, filed the present lawsuit in district court against BATF and its director, alleging that the agency had misinterpreted Title I of the Gun Control Act of 1968 (GCA), Pub.L. No. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. §§ 921–928 (1976)). The complaint sought a declaratory judgment that the GCA confines issuance of federal firearms licenses to persons engaging or intending to engage in bona fide firearms businesses, and an injunction against the issuance of federal firearms licenses to persons not so intending, with an order that BATF promulgate corresponding regulations and procedures. Jt.App. at 4, 16–17.

This district court denied the requested relief. *National Coalition to Ban Handguns v. Bureau of Alcohol, Tobacco and Firearms,* No. 80–3176 (D.D.C. Apr. 8, 1982), Jt.App. at 169. It found that both the plain meaning and the legislative history of the GCA indicated that Congress did not restrict the licensing of firearms (as appellants asserted) to "bona fide commercial enterprises," a term signifying a business with "a regular schedule of operation and [which] would be the primary occupation, or at least would involve a significant expenditure of time, by the operator." Slip op. at 10 n. 8, Jt.App. at 178 n. 8. In the absence of statutory misinterpretation, the district court found the agency's enforcement policy "generally unreviewable" as "agency action [which] is committed to agency discretion by law." Slip op. at 17–18, Jt.App. at 185–86, *quoting from Kixmiller v. SEC,* 492 F.2d 641, 645 (D.C.Cir.1974), and 5 U.S.C. § 701(a)(2) (1976).

In their appeal to this court, appellants dispute the agency's interpretation of the GCA but do not otherwise claim an abuse of discretion in enforcing the Act. *Cf.* Brief for Appellants at 48 n. 22.

## II

Before reaching the merits of this matter, we must satisfy ourselves of our authority to do so. Although appellants' standing has not been challenged on this appeal, as it was in the district court, the issue is of course a jurisdictional one that cannot be avoided. *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed.2d 126 (1908). *Cf.* Fed.R. Civ.P. 12(h)(3). We agree with the district court that in light of the reasonable congressional expectation and intent that proper implementation of the GCA would "provide support to Federal, State, and local law enforcement officials in their fight against crime and violence," GCA § 101, 82 Stat. at

1213, 18 U.S.C. § 921 note, at least appellant Edward Morrone, Chief of Police of New Haven, Connecticut, has alleged, Jt. App. at 100, a " 'distinct and palpable injury,' " *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (*quoting Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)), not " 'shared in substantially equal measure by all or a large class of citizens,' " *Gladstone, supra,* 441 U.S. at 100, 99 S.Ct. at 1608 (*quoting Warth, supra,* 422 U.S. at 499, 95 S.Ct. at 2205), and " 'likely to be redressed by a favorable decision,' " *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (*quoting Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). The constitutional prerequisites for a case or controversy therefore being met, there is no question of our jurisdiction over this matter under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 702 (1976).

### III

■ The GCA sets the conditions for licensing as a "dealer." It provides:

(c) Upon the filing of a proper application and payment of the prescribed fee, the Secretary shall issue to a qualified applicant the appropriate license which, ... shall entitle the licensee to transport, ship, and receive firearms and ammunition covered by such license ....

(d)(1) Any application submitted under ... this section shall be approved if—

(A) the applicant is twenty-one years of age or over;

(B) the applicant ... is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under ... this chapter;

(C) the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder;

(D) the applicant has not willfully failed to disclose any material information required, or has not made any false statement as to any material fact, in connection with his application; and

(E) the applicant has in a State (i) premises from which he conducts business subject to license under this chapter or from which he intends to conduct such business within a reasonable period of time, or (ii) in the case of a collector, premises from which he conducts his collecting subject to license under this chapter or from which he intends to conduct such collecting within a reasonable period of time.

18 U.S.C. § 923 (1976). This section modified the short-lived provision of the Omnibus Crime Control and Safe Streets Act of 1968 (OCCSSA), Pub.L. No. 90–351, 82 Stat. 197, enacted earlier that year:

(b) Upon the filing of a proper application and payment of the prescribed fee, the Secretary *may issue to the* applicant the appropriate license which, ... shall entitle the licensee to transport, ship, and receive firearms and ammunition covered by such license ....

(c) Any application submitted under ... this section *shall be disapproved and the license denied* and the fee returned to the applicant if the Secretary, after notice and opportunity for hearing, finds that—...

(2) the applicant ... is prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under the provisions of this chapter; or is, *by reason of his business experience, financial standing, or trade connections, not likely to commence business operations during the term of the annual license applied for or to maintain operations in compliance with this chapter;* or ...

(5) The applicant does not have, or does not intend to have or to maintain, in a State or possession, *business premises* for the conduct of the business.

*Id.* at § 923, 82 Stat. at 232 (emphasis added).

Appellants contend that the GCA prohibits the Secretary from issuing licenses to other than "bona fide firearms businesses" or "bona fide commercial enterprises." These terms are not defined, but appellants' meaning is evident from their Statement of the Case: "Many of the dealers [licensed by BATF] have no business premises, no inventory, no business telephone, nor any of the common attributes of a commercial enterprise; they do not collect sales taxes, do not have local business licenses, do not have established hours of opening, and do not advertise." Brief for Appellants at 4–5. Thus, appellants' contention is that the GCA requires that the licensed dealer not only conduct a minimum amount of business but also meet one or more (and probably more) of the following qualifications: (1) have separate business premises; (2) engage in practices typical of a significant level of business activity, such as obtaining a business telephone, advertising, and establishing regular business hours; and (3) comply with state and local law. Appellants argue that this "commercial enterprise" requirement is established by the language and legislative history of the GCA, as well as by its administrative and judicial interpretation.

We disagree. The language of § 923 contains none of the asserted requirements. The statutory requirement that the applicant have "premises from which he conducts business" cannot be stretched to produce them. The word "premises" itself does not import the conduct of a certain quantity of business or compliance with state and local licensing laws. Moreover, unlike the language of the OCCSSA, which it replaced ("business premises for the conduct of the business"), the word "premises" in the GCA context does not suggest premises separate and apart from the building or rooms used as the applicant's residence. This is evident from subparagraph (d)(1)(E)(ii), which imposes the same "premises" requirement on collectors. We doubt that Congress intended to limit collector licenses to the affluent few with special premises to house their collections.

Nor can the "conducts business" component of the statutory text produce appellants' result. We have said that "[t]he well settled definition of business" is "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." *Stone v. District of Columbia,* 198 F.2d 601, 603 (D.C.Cir.1952). The *Stone* definition has been generally adopted by courts interpreting the violation section of the GCA, making it unlawful "for any person, except [a licensee] to engage in the business of importing, manufacturing, or dealing in firearms or ammunition." 18 U.S.C. § 922(a)(1) (1976). *See United States v. Tarr,* 589 F.2d 55, 59 (1st Cir. 1978); *United States v. Huffman,* 518 F.2d 80, 81 (4th Cir.1975), *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975); *United States v. Day,* 476 F.2d 562, 567 (6th Cir.1973); *United States v. Gross,* 451 F.2d 1355, 1357 (7th Cir.1971); *see also United States v. Van Buren,* 593 F.2d 125, 126 (9th Cir.1979); *United States v. King,* 532 F.2d 505, 510 (5th Cir.1976), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976).[1] It seems to us, as it did to the district court, that business is business. We see no distinction between "engag[ing] in the business" (the statutory phrase in the violation section to which the above-cited cases relate) and "conduct[ing] business" for purposes of § 923(d)(1)(E). Indeed, the first sentence of § 923 uses virtually the same phrase as the violation section ("engag[ing] in business") in a context that makes this equivalency evident:

No person shall *engage in business* as a firearms or ammunition importer, manu-

---

1. The cases not adopting the *Stone* standard differ not in that they require a higher intensity of activity, but in that they dispense with the requirement of intent to profit: "whether [the person] has guns on hand or is ready and able to procure them for the purpose of selling them from time to time to such persons as might be accepted as customers." *United States v. Berry,* 644 F.2d 1034, 1037 (5th Cir.1981). *See also United States v. Swinton,* 521 F.2d 1255, 1258 (10th Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976).

facturer, or dealer *until* he has filed an application with, and received a license *to do so* from, the Secretary.

18 U.S.C. § 923(a) (emphasis added). The clear import is that whatever constitutes engaging in business can be licensed, so long as the requirements of the licensing provision (apart from any requirements supposedly inhering in a duplicitous use of the word "business" itself) are complied with. Since, therefore, the case law under § 922(a)(1) is applicable, it suffices to meet the business requirement of § 923(d)(1)(E) that the applicant devote *some* "time, attention and labor" to the selling of firearms for profit. Or, as expressed in one of the § 922 cases alluded to earlier, that he engaged in "a regular course of conduct carried on over a period of time or, at least, on more than one or two unrelated occasions." *Tarr, supra,* 589 F.2d at 59. This is far less than the "commercial enterprise" requirement that appellants would have us impose.

Appellants claim that despite the language of § 923, its legislative history supports a "commercial enterprise" requirement. We have examined the cited portions of that history and find them inconclusive—much less strong enough to import into the statutory text requirements which it does not explicitly contain. The most telling historical evidence of the content of the business requirement is found by comparing the GCA to the OCCSSA which it replaced. The new statute eliminated from § 923 the requirements of "business experience, financial standing, or trade connections" and of "business premises." The significance of this change—which is clear enough from the text alone—is confirmed by the Senate debate concerning Senator Dodd's unsuccessful attempt to reinsert the OCCSSA requirements into the version reported by committee. 114 Cong.Rec. 27,129, 27,131 (1968). *See, e.g., id.* at 27,125 (Statement of Sen. Dodd); *id.* at 27,130 (Statement of Sen. Tydings). Particularly pertinent to the present case was Senator Fong's complaint that the committee version "so loosens the standards for issuance of dealers' licenses, that a person who does not conduct *commercial operations* may qualify for the license." *Id.* at 27,133 (emphasis added). Appellants argue that these statements are not entitled to much weight because they represent only the views of opponents of the bill, consist of floor debate rather than legislative report, and were made in only one house. We think, however, that the overall debate on the Dodd amendment reflects the recognition of both sides that the new § 923 relaxed the commercial activity and business premises requirements of the OCCSSA. And while that recognition is not expressed in the legislative reports and the proceedings of the other house, neither is it contradicted by them. It is in any event a recognition of the obvious.

Appellants cite only a single judicial precedent to support their interpretation of § 923: *Bonham v. Alcohol, Tobacco and Firearms Division,* Civ. Action No. 3244–N (M.D.Ala. Apr. 2, 1971), Jt.App. at 85, where the district court affirmed the agency's denial of a license to an applicant who sought to do business from a residence which was zoned against business use, and who intended to use the license for himself and his friends. But the principle at stake in *Bonham* is not clear. The agency's finding that Bonham did not qualify as a bona fide dealer "as he seeks a license . . . for his own use and the use of his friends," Alcohol, Tobacco and Firearms Division, *Decision on Denial of Application for Firearms License* (Nov. 20, 1970) at 1, Jt.App. at 90, might be read as a finding that he was conducting no business whatsoever. The district court's unpublished opinion on review contains no analysis of the statutory scheme, only the cryptic assertion that "the Secretary's decision is 'authorized', meaning it is supported by substantial evidence." Slip op. at 2, Jt.App. at 86.

Appellants also argue that prior administrative interpretation of § 923 limited licenses to commercial enterprises. Brief for Appellants at 46 n. 21. They point to 26 C.F.R. § 178.11 (1969) (redesignated as 27 C.F.R. § 178.11 at 40 Fed.Reg. 16835 (1975)) which defines "business premises," and to

an internal memo of the Chief Counsel of the agency interpreting the "business licensing" standard of the GCA to require permanent business premises. Memorandum from Chief Counsel to Executive Assistant (Aug. 27, 1979), Jt.App. at 120–21. They also include in the appendix Order ATF O 5300.3 (Jan. 5, 1978), Jt.App. at 131, which instructs inspectors of firearms applications, in the event of doubt as to bona fide business intent, to consider the existence of "business premises" and such factors as "business hours," "sources of supply and financial status," and "advertising." But none of these pronouncements indicates that BATF has adopted the narrow interpretation of "conducting business" argued for here. The "business premises" definition of 27 C.F.R. § 178.11 does not bear on the issue of qualifications, since that term is used in neither the statute nor the regulations to describe the requirements for obtaining a license, see 27 C.F.R. § 178.47 (1982); indeed, the definition may undercut appellants' notion of business premises, since it makes clear that private dwellings can qualify as "premises" under the Act. The Memorandum of the Chief Counsel does not impose a "business premises" requirement but only says that the term "premises" implies the existence of permanent premises, which we do not understand BATF to contest. Finally, Order ATF O 5300.3 attaches no particular meaning to the term "business premises." It recites the *Stone* definition for doing business and adverts to "business hours," "sources of supply and financial status," and "advertising" as factors to be considered *to resolve doubt* concerning the applicant's motives. That they are relevant to the finding of intent to conduct business does not suggest that they are indispensable to it.

The only other statutory provision conceivably supporting any part of appellants' asserted requirement of "bona fide commercial enterprise" is 18 U.S.C. § 922(b)(2), which makes sale by a licensed dealer of "any firearm ... to any person in any State" unlawful "where the purchase or possession by such person of such firearm or ammunition would be in violation of any State law." Even assuming, however, that this provision is meant to federalize violations of ordinary zoning and commercial laws unrelated to gun control, it only makes certain actions illegal when performed by a licensed dealer; it does not spell out the conditions for receipt of a license.

BATF has argued on this appeal that the standards set forth in § 923(d)(1) are in any event merely a limitation upon the agency's ability to *deny* a license and not upon its ability to *grant* one. This argument rests upon the difference in terminology between the GCA and the OCCSSA which it replaced—the former establishing the conditions on which an application "shall be approved" whereas the latter established the conditions on which it "shall be disapproved." Since we have found that the GCA's standards do not in any event require the qualifications appellants would impose, we do not reach the more ambitious contention. We invite the agency to consider, however, that the same package of amendments that rewrote § 923(d) to impose the *duty* of granting a license also set forth, as the only grant of licensing authority to the Secretary, permissive or mandatory, the provisions of § 923(c) that the Secretary "shall issue [the appropriate license] *to a qualified applicant*" (emphasis added), *see* H.R.Rep. No. 1577, 90th Cong., 2d Sess. 16, *reprinted in* 1968 U.S.CODE CONG. & AD. NEWS 4410, 4422, an apparent reference to the qualifications set forth in § 923(d)(1).

The judgment of the district court is

*Affirmed.*