**UNITED STATES of America, Appellee,**

v.

**Donald Allen ELLIS, Appellant.**

**No. 83–2508.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1984.

Decided Nov. 6, 1984.

Nancy K. Olkon, Minneapolis, Minn., for appellant.

Thomas B. Heffelfinger, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Donald Allen Ellis appeals from a final judgment entered in the District Court [1] for the District of Minnesota after a jury verdict finding him guilty of unlawful possession of a firearm in violation of 18 U.S.C. App. § 1202(a)(1); aiding, abetting, and counseling with others to receive firearms in violation of 18 U.S.C. §§ 2(a), 922(h)(1); and aiding, abetting, and counseling with others engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. §§ 2(a), 922(a)(1). For the unlawful possession and the unlawful receipt counts the district court sentenced appellant to terms of two and five years imprisonment, respectively, to run concurrently,

---

[1] The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota.

and for the dealing in firearms count, to two years imprisonment, to run consecutively with the other sentences. For reversal appellant argues that the district court erred in (1) improperly interjecting itself during the trial on behalf of the government, (2) refusing to hold an evidentiary hearing or declare a mistrial based on improper juror communications, (3) upholding convictions and sentences based on multiplicitous charges, and (4) denying his motion for acquittal based on insufficient evidence. For the reasons discussed below, we vacate the conviction on the unlawful receipt count and affirm the remaining convictions.

The facts can be summarized as follows, keeping in mind that the evidence must be construed in the light most favorable to the jury verdict. *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). In July 1982, Officer Michael Adelson, Officer Thomas Wasmund, and two surveillance officers, all of the St. Louis Park, Minnesota, police department, began an undercover operation to recover stolen property and purchase illegal drugs.

Posing as house painters, Officers Adelson and Wasmund met Jeffrey Hauser in October 1982. Hauser subsequently arranged numerous transactions involving the purchase of stolen and illegal items. Hauser telephoned Officer Adelson on January 18, 1983, and asked Adelson to meet Hauser because Hauser's friends had some goods to sell. Officer Adelson agreed and he and Officer Wasmund met Hauser at a restaurant. Hauser introduced the officers to appellant, appellant's girlfriend, and Andre Ricky Halliburton, appellant's nephew. Hauser, Halliburton, appellant, and Adelson negotiated the sale of a stolen Panasonic video tape recorder and a video camera. Halliburton informed the officers that he could supply them with more merchandise, including some guns. The next day Halliburton and an unidentified man called "Bubba" sold the officers a gun.

At trial Hauser testified that he, appellant, and another of Hauser's friends had subsequently discussed where they could obtain guns to sell to Officer Adelson. In appellant's presence, Hauser said he knew a man who had many guns in his home and was out of town at the time. Hauser testified that appellant spoke with him on January 20, 1983, and told Hauser to arrange a meeting with Officer Adelson to sell him some guns.

Hauser contacted Officer Adelson the next day and told the officer that he had some stolen guns he wanted to sell and that someone was bringing the guns to his apartment.

At approximately 5:30 p.m. on January 21, 1983, Officers Adelson and Wasmund went to Hauser's apartment. When they arrived Hauser was alone, but Hauser indicated that Halliburton would be delivering the guns. Hauser indicated that the guns had been stolen very recently. At about 6:00 p.m., two cars drove up and parked outside Hauser's apartment building—a gold Cadillac and a 1983 Buick Skylark, which was leased to appellant's girlfriend. Appellant was driving the Cadillac.

Halliburton got out of the Buick and opened the trunk, which contained nine rifles and shotguns. Officer Adelson removed the guns and carried them into the basement area of the apartment building, accompanied by Officer Wasmund, Hauser, and appellant.

Although all the guns were operable or could have been made operable, the officers inspected the guns and expressed dissatisfaction with the quality of the guns, handing them to appellant for his inspection. Appellant stated that better quality guns had been overlooked during the burglary. Appellant and the officers negotiated a sales price, finally settling upon $275.00 for all nine guns. At the time of this transaction, appellant was a convicted felon and was not licensed to sell firearms. Officer Adelson handed appellant the money; Hauser claimed $75.00 as his share. After Hauser and appellant left the basement, the officers gathered the guns together and left the building. On January 26, 1983, the officers purchased more sto-

len merchandise from Halliburton and appellant, but no firearms were involved.

Appellant, Hauser, and Halliburton were convicted felons at the time of these transactions. Hauser and Halliburton pleaded guilty to unlicensed dealing in firearms in violation of 18 U.S.C. § 922(a)(1). Halliburton also pleaded guilty to being a felon in receipt of a handgun, in·violation of 18 U.S.C. § 922(a)(1). Hauser testified at appellant's trial on behalf of the government. Halliburton testified on behalf of appellant.

*Judicial Misconduct*

Appellant argues that throughout his trial the district court improperly interjected itself on behalf of the government, thereby depriving appellant of his right to a fair and impartial trial. The government notes that appellant did not object to those comments of which he now complains and argues that the district court conducted itself in a fair and impartial manner and that the district court's interjections were designed to aid the jury in viewing the evidence.

■ In the absence of a timely objection by appellant, appellate courts may only correct "plain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b). We have carefully reviewed the record in the present case, paying particular attention to the portions of the transcript referred to by appellant, and we hold that no plain error exists. The district court assisted both sides in their presentation of evidence and examination of witnesses in an effort to aid the jury's understanding of the case.[2]

*Juror Misconduct*

This trial began on Friday, August 26, 1983, and presentation of evidence was concluded Saturday morning. Before trial resumed on Saturday morning, the district court asked the jurors to consider whether they wanted to begin deliberations that afternoon or would prefer to go home for the weekend and begin deliberations on Monday morning:

THE COURT: Now this being Saturday morning at nine o'clock, I am going to leave it to you as to how, once we complete the evidence, how you want to deliberate after that. It is entirely up to the jury as to whether you want to stay this afternoon and deliberate for an hour or two and see how you are coming, or whether you want to go home as soon as the evidence is over and come back Monday morning and deliberate. You can talk that over when you get back there and see what you want to do.

Following presentation of the evidence that morning, the district court declared a recess during which the court and attorneys went over the instructions. The district court then recalled the jury. After final arguments and instructions, one juror stated: "A question, Your Honor. In our last recess the jury reached more or less a consensus that we're interested in seeing if we have a consensus on the verdict." After further discussion between the attorneys and the district court, it was decided that deliberations should begin the following Monday, August 29, and the jury was then excused and directed to return on Monday. Appellant neither objected after the district court's request of the jury on Saturday morning nor after it became apparent that the jurors had discussed at least whether to deliberate. Only after closing arguments were made, instructions were given by the court and the jury was excused did defense counsel make a motion for an evidentiary hearing to consider whether the jurors had improperly discussed the evidence *before* submission of the case or for mistrial. The district court denied these motions.

■ Appellant argues that it was plain error for the district court to fail to inquire further whether the jury improperly began discussing the case before the close of the evidence. The government argues that the issue was not properly preserved for review because defense counsel failed to

**2.** The present case is distinguishable from *United States v. Singer,* 710 F.2d 431 (8th Cir.1983) (banc), in which the district court essentially assumed the role of prosecutor, thereby unavoidably giving the jury the impression of one-sidedness. *Id.* at 432.

make a timely objection. We agree. Here, the district court asked the jurors to consider only whether they wanted to begin deliberations that afternoon or wait until Monday. The district court properly instructed the jury not to consider or discuss the case until the case was submitted to the jury by the court. We hold, therefore, that there was no plain error.

*Duplicitous Convictions*

Next, appellant argues that the district court erred in sentencing him for aiding and abetting others to unlawfully receive firearms, in violation of 18 U.S.C. § 922(h)(1), and for unlawful possession, in violation of 18 U.S.C.App. § 1202(a)(1), because the factual basis for each charge was identical, thus subjecting appellant to double jeopardy. We find it unnecessary to decide this issue. At oral argument the government agreed that if this court affirmed the convictions for aiding and abetting the unlawful receipt of firearms and aiding and abetting others engaged in the business of unlawful dealing in firearms, then the government would not object if this court vacated the unlawful possession conviction, the lesser of the two concurrent sentences.[3]

*Sufficiency of Evidence*

Appellant argues that there was insufficient evidence to prove that he aided and abetted the unlawful receipt of firearms.

■ Appellant does not argue that Hauser and Halliburton did not receive the nine firearms on January 21, 1983, nor does he contest that the receipt of those guns was unlawful because both Halliburton and Hauser were convicted felons. Instead, appellant argues that the only evidence of his participation in the unlawful receipt of firearms was his presence at Hauser's apart-

ment on January 21, 1983, and that his presence was insufficient evidence to support his conviction. This argument is frivolous. Hauser testified that he discussed with appellant the need to obtain guns to sell to Officer Adelson and that appellant was present when Hauser spoke of the man he knew who had many guns in his home and was out of town at the time. Hauser also stated that on January 20, 1983, appellant contacted Hauser and told him to arrange a meeting with the officers to sell them some guns. Appellant and Halliburton arrived at Hauser's apartment with the guns at the designated time. Appellant handled several of the guns and played an active role in the negotiations to sell nine guns to the officers. During the negotiations, appellant indicated that he was aware of several details about the theft of the guns sold to the officers. Viewing this evidence and all reasonable inferences therefrom in the light most favorable to the jury verdict, we hold that appellant's conviction for aiding and abetting the unlawful receipt of firearms was supported by sufficient evidence.

■ Finally appellant argues that there is insufficient evidence to sustain his conviction for aiding and abetting others in the unlawful dealing of firearms. Appellant claims that the government failed to establish that Hauser and Halliburton were engaged in the *business* of dealing in firearms.[4] We disagree.

A "dealer means anyone who is engaged in *any* business of selling firearms, and that 'business' is that which occupies time, attention, and labor for the purpose of livelihood or profit." *United States v. Gross,* 451 F.2d 1355, 1357 (7th Cir.1971) (emphasis in original). *See also United States v. Hamilton,* 689 F.2d 1262, 1271 (6th Cir. 1982), *cert. denied sub nom. Salisbury v.*

---

3. Appellant also argues that his conviction for aiding and abetting others engaged in the business of dealing in firearms without a license is duplicitous with either or both of the other counts, subjecting appellant to double jeopardy. In view of the Supreme Court's recent re-evaluation of the prohibition against double jeopardy in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United*

*States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), and *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), we find this argument to be without merit.

4. It is undisputed that Halliburton, Hauser and appellant were not licensed to deal in firearms.

*United States,* 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 970 (1983); *United States v. Perkins,* 633 F.2d 856, 859 (8th Cir.1981); *United States v. Tarr,* 589 F.2d 55, 59 (1st Cir.1978); *United States v. Williams,* 502 F.2d 581, 583 (8th Cir.1974). The statute does not specify a minimum number of sales or dollar volume of sales, and courts have refused to draw bright lines specifying what number of sales sufficiently constitutes a "business" of dealing in firearms. In *United States v. Hamilton,* 689 F.2d at 1272 (emphasis in original; citations omitted), the court stated that "anyone is engaged in the business of dealing in firearms if they have guns *on hand or are ready and able to procure them,* in *either* case for the purpose of selling some or all of them to such persons as they might from time to time conclude to accept as customers." In *United States v. Tarr,* 589 F.2d at 59, the court hypothesized that it could conceive of a single sale sufficiently large enough in the number of guns sufficient to establish a violation of 18 U.S.C. § 922(a)(1). We need not decide whether the January 21, 1983, transaction alone established that Hauser and Halliburton were engaged in the business of dealing in firearms because there was evidence of additional sales of guns by Hauser and Halliburton. On January 18, Halliburton indicated to Officer Adelson that he could obtain additional merchandise for him, including guns. On January 19, 1983, Halliburton did in fact sell Officer Adelson a gun. In addition, Hauser and Halliburton admitted at appellant's trial that they were involved in selling firearms. The government clearly established that Hauser and Halliburton were engaged in the business of dealing in firearms.

The more salient question is whether there was evidence that appellant, albeit an active participant in the January 21, 1983, gun sale, knew that Hauser and Halliburton were engaged in an unlawful business of dealing in firearms. In *United States v. Tarr,* 589 F.2d at 60, the defendant had participated in a single sale of a machine gun and the court concluded that

a single sale, under these circumstances, does not establish that appellant knew that [the others] were engaged in the business of dealing in firearms, which is one of the elements of the crime charged in Count II. While there was evidence that [the others] were engaged in the business of dealing in firearms, this was independent of appellant and there was no evidence that appellant had knowledge of [the others'] activities at other times and places.

However, the court went on to note that "[t]here was no evidence that appellant knew [the others] or that he talked to them at all, even by way of greetings, on the day in question." *Id.*

The facts in the present case are significantly different. First, appellant certainly knew Hauser and Halliburton. Appellant also knew that Hauser needed to obtain guns to sell to the undercover officers. Appellant heard Hauser discuss the need to steal the guns which were eventually sold to the officers. Finally, appellant actively participated in the price negotiations and received the purchase money from Officer Adelson for the January 21 transaction. After a careful review of the record, we hold that there was sufficient evidence that appellant knew Hauser and Halliburton were engaged in the business of dealing in firearms and that appellant aided and abetted them in engaging in the business of dealing in firearms without a license.

Accordingly, the conviction for aiding and abetting the unlawful receipt of firearms and the conviction for aiding and abetting others in the unlawful business of dealing in firearms are affirmed. The conviction for unlawful possession of firearms is vacated.