John A. MacFadyen, Richard Gonnella, Providence, R.I., for defendant.

---

**Raymond ROBIDOUX and Janet Robidoux, Plaintiffs,**

v.

**Richard CONTI, Defendant.**

**Civ. A. No. 89–0087 L.**

United States District Court, D. Rhode Island.

Aug. 9, 1990.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before this Court on defendant's motion to dismiss for failure to state a claim and on defendant's motion for summary judgment. Defendant, Richard Conti, challenges the sufficiency of plaintiffs' civil RICO claim and argues that since the defendant was not "in the business of lending money," this Court must summarily dismiss plaintiffs' federal RICO claim. Conti further argues that once the Court dismisses the federal claim, it must also dismiss plaintiffs' pendent state law claims.

### Background

Plaintiffs, Raymond and Janet Robidoux, filed this suit in this Court claiming that, by lending money to them at usurious rates, Conti violated federal and state Racketeer Influenced and Corrupt Organizations Acts and state usury laws. The complaint alleges that on March 11, 1985, plaintiffs borrowed money from Conti. Plaintiffs contend that Conti charged a rate of interest above 200% per annum. Plaintiffs assert that Conti was President of the Mutual Volkswagen Corporation (Mutual Volkswagen), that all transactions relating to that loan occurred on the corporation's premises, and that Conti paid portions of the monies received from the usurious loan to Mutual Volkswagen's accounts.

The complaint also alleges that on September 16, 1985, Richard Conti again loaned the Robidouxs money. Conti supposedly insisted that the Robidouxs use their commercial real estate (a gas station and auto repair facility) as collateral. Although the promissory note and the mort-

gage deed listed Rose Conti, Richard's mother, as the mortgagee, and although Rose Conti provided the cash for the loan, plaintiffs contend that Richard Conti was the real party in interest. They assert that this second loan also called for an interest rate of over 200% per annum. Finding themselves unable to repay the loan, the Robidouxs, allegedly at the urging of Richard Conti, transferred all their right, title and interest in their commercial real estate to Conti. Plaintiffs finally claim that at the real estate closing, Conti insisted that the Robidouxs sign a third promissory note for $60,000.00 to cover monies owed to him. This note was secured by a mortgage on plaintiffs' residential property.[1]

In plaintiffs' Memorandum in Support of their Opposition to defendant's motions, they assert that Conti used monies obtained from the usurious loans in conjunction with his businesses. The Robidouxs contend that although Richard Conti originally placed the repayment funds in a bank account in the name of Richard Conti, Trustee for John R. Conti, he later removed the funds and placed them in the accounts of Mutual Auto Body and Mutual Volkswagen. Plaintiffs argue that by tracing the money to Conti's business accounts, they have shown that he conducted business through the collection of the unlawful debts.

Conti confirms that he loaned the Robidouxs money but denies that he made the loans at usurious rates. His affidavit and the deposition testimony of Janet Robidoux indicate that Raymond Robidoux, at his wife's suggestion, asked Conti for a loan, because he was a good customer of their gas station. He stated that he has not made any other loans to any other persons and contends that his mother, not he, lent the Robidouxs the money in the second instance. He admits that he did place a five hundred dollar late fee in Mutual Volkswagen's account, but said that he did not place any other funds from the Robidouxs' repayments in his business ac-

counts. He contends in his 12(b)(6) motion that plaintiffs' failure to allege that he was "in the business of lending money" proves fatal to their action. He further claims that, even if plaintiffs amended their complaint, this Court must dismiss plaintiffs' federal RICO claims because, as a matter of law, Conti was not "in the business of lending money."

## Discussion

### I. Motion to Dismiss, Fed.R.Civ.P. 12(b)(6).

Since technically defendant's motion to dismiss is untimely, and since both parties submitted materials outside the pleadings, this Court will treat defendant's 12(b)(6) motion as a motion for summary judgment. *See Gillentine v. McKeand,* 426 F.2d 717, 720 (1st Cir.1970); Wright & Miller, *Federal Practice and Procedure,* Civil 2d § 1357 (1990) (a post-answer motion to dismiss under 12(b)(6) is technically untimely). Submitting affidavits and deposition testimony with the motion to dismiss converts the motion into a motion for summary judgment. Fed.R.Civ.P. 12(b)(6). Here, the motion merely merges with defendant's already pending motion for summary judgment.

### II. Summary Judgment.

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, this Court can dispose of actions only when no genuine issue of material fact exists or when only a question of law remains. *General Elec. Co. v. United States Dynamics, Inc.,* 403 F.2d 933, 934 (1st Cir.1968). "[T]he purpose of summary judgment is not to explore all the factual ramifications of the case, but to determine whether such exploration is necessary." *Ayala v. Secretary of HEW,* 51 F.R.D. 505, 507 (D.P.R.1971); *see also Rivera Morales v. Benitez de Rexach,* 541 F.2d 882, 884 (1st Cir.1976). Since Conti challenges the applicability of 18 U.S.C. § 1962(a) and (c), he raises a ques-

---

**1.** Plaintiffs' original complaint does not claim that this third loan violated RICO. Although plaintiffs have filed a motion to amend the complaint to include the third loan in the ac- tion, this Court has yet to decide that motion. Therefore, for purposes of this review, this Court will only consider the March and September 1985 loans.

tion of statutory construction appropriate for court decision. *See Gillentine, supra,* 426 F.2d at 720 n. 4.

## III. RICO.

■ Plaintiffs seek redress under 18 U.S.C. § 1964 for violations of 18 U.S.C. § 1962(a) and (c) of the Racketeer Influenced and Corrupt Organizations Act (RICO). These sections provide in pertinent part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, ... through collection of an unlawful debt in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(a) & (c) (1984). The statute defines "unlawful debt" as

a debt (A) ... which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, *and* (B) *which was incurred in connection with* the business of gambling ... or *the business of lending money* or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6) (1984) (emphasis added). Section 1964 provides a civil remedy to those injured in their business or property by the above violations. 18 U.S.C. § 1964(c) (1984). Conti alleges that based on the facts before the Court, the plaintiffs have failed to establish either that Conti was in the business of lending money or that he conducted his business activities through collection of the unlawful debts. He argues that such precludes plaintiffs' suit under RICO.

When construing statutes, courts must apply the plain and unambiguous language contained therein unless a clear legislative intent to the contrary exists. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). In conjunction with this rule, this Court notes the generally accepted meaning of the word "business." Business signifies a profession or on-going activity for profit or livelihood. It connotes a continued, rather than an isolated, practice. An attorney who sold one or two houses would not be considered in the business of selling houses, while a realtor, who sold many houses over time, would be considered engaged in the business of selling realty.

Although neither the RICO statute nor any case law relating to RICO define what constitutes the "business of lending money," courts, defining "business" in other contexts, have agreed with the view professed above. The First Circuit, exploring the meaning of "business" in the criminal context of a "person engaged in the business of selling firearms," stated that "business is that which occupies time, attention and labor for the purpose of livelihood or profit." *United States v. Tarr,* 589 F.2d 55, 59 (1st Cir.1978); *accord National Coalition to Ban Handguns v. Bureau of Alcohol, Tobacco & Firearms,* 715 F.2d 632, 635 (D.C.Cir.1983); *United States v. Huffman,* 518 F.2d 80, 81 (4th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975). The court noted that "business" implies more than isolated transactions. *Tarr, supra,* 589 F.2d at 59; *see also United States v. Perkins,* 633 F.2d 856, 859–60 (8th Cir.1981). Likewise, courts examining jurisdiction over a corporation "doing business" in a state focus on the continuity of transactions relating to business within a particular state. *Martin v. Fischbach Trucking Co.,* 183 F.2d 53, 54 (1st Cir.1950) (single incident not enough to constitute doing business); *see also Watson McDaniel Co. v. National Pump & Control, Inc.,* 493 F.Supp. 18, 22 (E.D.Pa.

1979) (four purchases within state not doing business).

The legislative policy of RICO confirms the view of "business" as something more than a few isolated transactions. Many courts have noted the original intent of Congress to protect legitimate businesses from organized crime. *See Fleet Credit Corp. v. Sion,* 699 F.Supp. 368, 374 (D.R.I. 1988), *rev'd on other grounds,* 893 F.2d 441 (1st Cir.1990). Hence, the statutory prohibitions against racketeering activities and large scale gambling. *United States v. Salinas,* 564 F.2d 688, 691 (5th Cir.1977) (unlawful collection of debt incurred in business of gambling targets large scale, as contrasted with small scale, gambling), *cert. denied sub nom., Davis v. United States,* 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 800 (1978). The Second Circuit, following this rationale, viewed the "business of lending money" requirement as designed to target loan sharks. *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 755 F.2d 239, 250 (2d Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). The Second and the Ninth Circuits agree that "the civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge. RICO is concerned with evils far more significant than the simple practice of usury." *Id.* at 248; *see also Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n,* 840 F.2d 653, 666 (9th Cir.1988). This Court agrees with that interpretation.

Although the parties contest most of the pertinent facts, the facts applicable to a determination of whether Conti was "in the business of lending money" are not contested. Conti operated automobile dealerships. He did not hold himself out as a lender of money. He did not suggest that he loan money to the Robidouxs. The Robidouxs approached him on the matter. Conti had never made other loans and states that he does not intend to loan money in the future. Even if Conti, rather than his mother, gave plaintiffs the second loan, and even if Conti knowingly charged usurious rates, these two isolated incidents do not represent a regular source of Conti's income or livelihood. Plaintiffs have not shown any continuity. Since Congress did not intend to penalize isolated instances of usury, this Court finds that plaintiffs have failed to meet the second tier requirement of the statute—the need for proof that the debts relate to the business of gambling or the business of lending. Plaintiffs' federal RICO claim, therefore, fails.

Plaintiffs' attempt to trace the monies received from the alleged usurious loans to Conti's businesses does not save their federal claim. Even if this Court accepts plaintiffs' allegations, their failure to establish that Conti was in the business of lending money completely defeats their RICO claim. *See Durante, supra,* 755 F.2d at 248. To sustain a RICO claim, each and every element must be clearly established. *Id.*

## IV. Pendent State Law Claims.

When courts dismiss federal claims on which state claims derive jurisdiction, they generally dismiss the state claims as well unless judicial economy, convenience, and fairness to the litigants dictate that the court should retain jurisdiction. *See Graf v. Elgin, Joliet & Eastern Ry. Co.,* 790 F.2d 1341, 1347–48 (7th Cir.1986); *Ingram Corp. v. J. Ray McDermott & Co., Inc.,* 698 F.2d 1295, 1320 (5th Cir.1983); *Jones v. State of Rhode Island,* 724 F.Supp. 25, 34 (D.R.I.1989). Since this action has only reached preliminary stages, and since plaintiffs may still obtain relief at the state level, this Court believes it is prudent to dismiss the pendent state law claims along with the federal RICO claims.

### Conclusion

For the reasons stated above, this Court grants defendant's motion for summary judgment. The Clerk will enter judgment for the defendant forthwith.

*It is so Ordered.*